## TAYLOR *v.* VAN BUREN BUILDING ASSOCIATION.

### Opinion delivered June 10, 1892.

*Building associations—Usury.*

> There is no usury in an advancement upon its shares by a building association made in the usual form to a shareholder (*Reeve v. Ladies' Building Association, ante,* p. 335 followed); nor can there be usury in any contract which expressly provides that no unlawful interest shall be paid.

Appeal from Crawford Circuit Court in Chancery.

HUGH F. THOMASON, Judge.

*B. T. Duval* and *S. S. Wassell* for appellant.

The transactions were mere loans of money, and usurious and void. 10 S. W. Rep. 787; 63 Ga. 373; 14 Lea, 677; 2 Cold. 418; 10 Md. 397; 96 Am. Dec. 147; 73 N. C. 292; 12 Rich. Eq. 214; 7 Neb. 173; 19 W. Va. 684; 11 Bush, 296; 26 Pa. St. 269; 39 *id.* 137; *ib.* 156; 30 *id.* 465; 25 Ohio St. 186; 48 Iowa, 385; 55 *id* 424; 24 Conn. 147; 68 Tex. 282. All the courts, except in those States where building associations are regulated by statute, and perhaps two States where the partnership theory prevails, treat the transactions as loans. Endlich, B. Ass. secs. 354-358; 10 S. W. Rep. 787; 12 *id.* 945; 69 Ala. 413. More than 10 per cent. interest *on the amount* received is charged, and the partial payment plan provided by our statute is not followed. Endlich, B. A. sec. 374.

*Turner & Turner* and *Sandels & Hill* for appellee.

The transactions are not usurious. Tyler, Usury, p. 110; 25 Ark. 258. Because not loans, but simply dealings in partnership funds by members with the association. Tyler, Usury, p. 92; 2 Beas. 428; 23 Gratt. 787; 1 McArthur, 385; 2 *id.* 594; 46 Ga. 166; 21 *id.* 592; 63 *id.* 373; 13 Gray, 157; 43 N. H. 194; 10 Md. 397; 69 Ala. 456; 11 C. E. Green, 351; 100 Ill. 413; 62 Ind. 264.

The English cases of 6 Bing. N. C. 180, and 8 Scott, 300, have been followed ever since. 5 DeG. & Sm. 17; 15 Eng. L. & Eq. 477; 6 Allen, 1; 22 Kas. 624; 25 Barb. 263; 91 N. Y. 43. The money was not to be repaid, but only certain monthly dues until the stock matured. This was uncertain, and depended upon certain contingencies. Tyler, Usury, p. 98; 1 Wall. 604; 4 Pet. 205; Tyler on Usury, pp. 173, 175. The interest does not exceed ten per cent, and it is expressly stipulated that no more should be claimed or collected. Endlich, B. Ass. secs. 372, 374, 388, 389, 390, 456; 97 Pa. St. 514; 7 Peters, 103; 6 S. E. Rep. 333.

HUGHES, J. The appellant brought this suit below to set aside three mortgages executed to defendant corporation, alleging that the mortgages were usurious.

The first mortgage was conditioned: "That whereas, B. L. Orrick sold to the Building and Loan Association twenty shares of stock for the sum of two hundred and forty dollars, and by the terms of said sale Orrick has bound himself to pay all subsequent dues on the stock thus sold and interest on the face of the stock at the rate of 9 per cent. per annum, that is to say, $5 dues per month on the stock and $3.75 interest per month," etc., "and all fines imposed," and thereupon, upon failure to perform the conditions of the bond for three months, the mortgagee to sell said property, "the proceeds of the sale, after paying costs of sale, shall be applied to the payment of the four hundred and forty dollars and the accrued interest thereon at 9 per cent. per annum, less the amount of dues and interest paid by said Orrick, and thereupon the certificates of stock shall be cancelled and annulled, the remainder of the proceeds, if any, to be paid to the mortgagor." And there is the following stipulation: "It is also understood that in no instance shall any claim be made by said building association for any interest or any

moneys mentioned herein, or any money in lieu of interest, which shall exceed the rate of 10 per cent. per annum." The second deed of trust has the same conditions, and recites the sale of twenty shares of stock for $462.50. The third deed of trust is identical with the other two, except it recites the sale of forty shares of stock for $925.

The answer denies that said transaction was a loan of money, but avers that it was a purchase and redemption of said twenty shares of stock.

Plaintiff took no proof. Defendant took the deposition of Jesse Turner, Jr., and that of S. A. Pernot.

Jesse Turner, Jr., testified : " We were advised that, in case of foreclosure, if only the actual amount received by a member was secured by the deed, the transaction would be unobjectionable. This information was imparted to the directors, and the plan was adopted, although it does not secure the premium, and the secretary was instructed to prepare all contracts in accordance with this plan. I prepared the contracts referred to in the complaint. I did not at first calculate to ascertain whether 9 per cent. on the face of the stock sold in each case would exceed 10 per cent. on the amount actually received, because I supposed that a proper construction of the clause contained in each deed of trust, to the effect that in no event shall any claim be made by said association for any interest on any of the moneys mentioned in the deed of trust, or any money in lieu of interest which should exceed 10 per cent., would, by its terms, limit the contract to that rate. I have, since the institution of this suit, however, made various calculations and find that, in reference to the first transaction mentioned in plaintiff's complaint, 9 per cent. on the face value of the stock would exceed 10 per cent. on the amount actually received for the same, the sum of one dollar. As to the other transactions, 9 per cent. on the face of

the stock would fall short of 10 per cent. on the amount received for the stock."

S. A. Pernot testified: "A member (non-borrowing member) obligates himself to pay one per cent. per month on the face value of his stock until the amount of those payments called dues, with the earnings of the association, should be sufficient to pay the face value of every share in the association. When that condition is brought about, the association terminates. Members, who wish to anticipate the time of winding up, sell their shares to the association and agree to keep the same alive, the vendor continuing to pay the monthly dues on the stock in accordance with his original agreement; and superadded to this original obligation as a member of the association, he enters into another obligation, when sale of stock is consummated, to pay in monthly installments 9 per cent. per annum on the face value of the stock transferred, sold to the association, until the association winds up. He gives the 9 per cent. in the way of interest for the privilege of getting in advance what the non-selling members only get at the end of an indefinite number of years, namely, when the association shall have wound up. Inasmuch as there may be a number of applicants to sell stock, and the funds in the treasury not sufficient to meet the demands, and each applicant being equally entitled to it, the question of priority is settled by offering premiums at an open competitive bidding for the privilege of selling stock. Each party wishing to sell his stock to the association makes a formal application in writing for that purpose, stating the number of shares he wishes to dispose of and the security he has to offer, in compliance with the requirements of the association. If the party's bid be accepted, and his security be found sufficient, he executes a bond and deed of trust to the association, conditioned that he will continue to make payments on

his stock, called dues, and his interest, together with all fines, and that he will continue such payments until the series is wound up. That is, he shall continue to pay until the financial condition of the association is such that the association will pay, dollar for dollar, all stock which has not previously been sold to it. When this condition exists, the before mentioned obligations of the selling members are cancelled, the non-selling members are paid the face value of their stock and the association winds up."

Pernot further says: "We credit the defaulting member with the gross amount of all stock payments (dues) paid in by him from the beginning of the association up to the date in question (that is, the day his mortgage is foreclosed), and add to it all interest payments made by him on his stock subsequent to the date of sale of his stock. The aggregate is the sum total of all the credits to which he is entitled. We charge the defaulting member with the actual amount he received from the association for the stock. On this amount we calculate interest at the rate of 9 per cent. from the time the money was paid to him up to the time in question. The association would have wound up February 22, 1890, if the contracts in this case had been carried out. The association itself has never built any houses. When there is money on hand and no applications for it, we loan it to outsiders at 10 per cent. This is under our constitution and by-laws."

The court below dismissed the complaint, and gave the appellee a decree.

The controlling and main questions of law in this cause are discussed and settled in the case of *Reeve* v. *Ladies' Building Association, ante,* p. 335. The transactions in this case, which it is contended are usurious, are governed by the principle applied in that.

Besides, in the three mortgages involved in this cause, there could not be usury, because in each it is provided that "it is also understood that in no instance shall any claim be made by said building association for any interest or any moneys mentioned herein, or any money in lieu of interest, which shall exceed the rate of ten per cent per annum. It would seem that there can be no usury in a contract that expressly provides that no unlawful interest shall be paid, unless in fact the transaction was a device or cloak to cover usury. If the borrower pay more than the contract seeks to oblige him to pay, it cannot be referred to the obligation of his contract; it is outside of the contract, and not a part of the bargain. Under this provision, the borrower is not obliged to pay more than the amount he receives and 10 per cent. per annum interest thereon. When he shall have done that, he may, under the contract, cease to make further payments; he is not obliged to do more. There can be no usury in this.

The decree is affirmed.