SCRINOPSKIE *v.* MEIDERT.

4-8504                                                    210 S. W. 2d 281

Opinion delivered April 19, 1948.

*Byron Bogard,* for appellant.

*Paul E. Talley* and *Wayne W. Owen,* for appellee.

HOLT, J. Prior to November, 1946, appellant, Izzy Scrinopskie, and appellee, Johnny Meidert, were partners, operating three liquor stores in the city of North Little Rock, known as "Mint Liquor Store," "101 Liquor Store," and "Pike Liquor Store." This partnership was mutually dissolved and a dissolution agreement entered into November 26, 1946. Under the terms of this agreement, appellant acquired two of the liquor stores and appellee, Meidert, was paid $10,000 in cash and $8,000 in merchandise, and in addition, the agreement provided for the execution of a written lease from appellant to Meidert on the property occupied by the Mint Liquor Store for a twelve-month term with options for annual renewals up to November 1, 1950. Appellant held a lease on this property which expired on the latter date.

The agreement further provided that the lease should contain the following provisions: "It being understood that said lease shall provide that in the event party of the second part (Meidert) shall discontinue the retail liquor business, then same shall operate as a cancellation of said lease between the parties hereto."

This lease was formally executed December 1, 1946, containing the above mentioned provisions and the further covenant under which appellant agreed "not directly or indirectly or through agents or employees to operate a liquor store within one-half mile of the above described property during the period of this lease or any

extensions or renewals thereof.'' The lease also contained the following additional provisions:

(a) ''It is mutually agreed by and between the parties hereto that in the event party of the second part (Meidert) ceases to operate a liquor store in the premises heretofore granted for any reason, either willingly, at his own option or by virtue of a revocation of his permit, this lease may at his sole option be immediately terminated.''

(b) ''It is the intention of this lease agreement to grant unto the party of the second part (Meidert) the same rights and privileges with reference to the space now occupied by the Mint Liquor Store as hereto enjoyed by the parties hereto in the operation of said Mint Liquor Store, with the above mentioned eight-foot extension. And it is agreed that the assigns, transferees and heirs-at-law of the party of the second part (Meidert) and the assigns, transferees and heirs of any person or persons succeeding to the rights of the party of the second part (Meidert) herein shall enjoy all the rights and privileges which will be conveyed unto the party of the second part by the terms of this agreement.''

Under the terms of this lease, Meidert agreed to pay a rental of $50 a month for the Mint Liquor Store for a period of one year, with renewal options up to November 1, 1950.

This lease was duly recorded December 6, 1946.

During March, 1947, appellant received a monthly rental check from Bennie Johnson, one of the appellees, which appellant declined, and returned. Upon investigation, appellant learned that appellee, Meidert, in February, 1947, had sold the Mint Liquor Store to Bennie Johnson and had assigned his lease from appellant to her, and that Meidert no longer operated the business upon the premises. In July, 1947, and prior to trial of the present suit, appellee, Bennie Johnson, vacated the premises of the Mint Liquor Store and moved to a new location across the street.

Subsequent tenders of the monthly rentals were made to appellant by Bennie Johnson, which appellant refused and at the trial of the present case, tender was made to appellant.

This suit was brought by appellant on June 7, 1947, to cancel the lease and evict appellee, Bennie Johnson, from the premises. Appellees denied that appellant had the right to cancel the lease. On a hearing, the Chancellor found that appellant was entitled to cancellation of the lease, but that he should be enjoined from operating a liquor store on the premises where the Mint Liquor Store was located.

Appellant has appealed from that part of the decree which enjoined him from operating a liquor store on the premises, and appellees, Johnny Meidert and Bennie Johnson, have cross-appealed from that part of the decree which cancelled the lease.

The facts appear not to be in dispute. The primary and decisive questions presented are: (1) Did appellee, Meidert, under the terms of the lease, in question, have the right to sell and assign the lease on the Mint Liquor Store to appellee, Bennie Johnson? (2) Did the trial court err, in the circumstances here, in enjoining appellant from operating a liquor store on the premises in controversy?

After a careful review of the record, we have reached the conclusion that the court erred in holding that the lease in question was of such a personal nature as to preclude its assignment in any and all circumstances. In our interpretation of the provisions of the lease contract before us, there are certain well defined rules to guide us. Every effort should be made to interpret contracts favorably to their enforcement and to prevent forfeitures.

In *Singer Sewing Machine Co.* v. *Brewer,* 78 Ark. 202, 93 S. W. 755, this court said: "Forfeitures are not favored in the law, and in order to be enforced they must be plainly and unambiguously provided in the contract.

It is the duty of courts, when contracts are fairly susceptible of more than one construction, to adopt such as will not work a forfeiture of the acquired rights of either party.''

In *Williams* v. *Shaver*, 100 Ark. 565, 140 S. W. 740, it is said: ''But where forfeitures are provided for by the express terms of a contract, it has been well settled that they are not favored in equity. It is well recognized that the right of forfeiture is a harsh remedy and liable to produce great hardships. For this reason it has been uniformly held that before a forfeiture will be declared the law will require that a strict compliance with every important prerequisite must be shown, even in such contracts where the forfeiture is provided for by express terms.''

This court again in the case of *Hastings Industrial Co.* v. *Copeland*, 114 Ark. 415, 169 S. W. 1185, with reference to construing contracts said: ''In construing a contract, the object is to arrive at the intention of the parties as shown by the circumstances surrounding the making of the contract, the situation and relation of the parties, and the sense in which, taking these things into consideration, the words used would naturally be understood. . . . As between two constructions, each reasonable, one of which will make the contract enforceable, and the other of which will make it unenforceable, that construction which makes the contract enforceable will be preferred. Thus, if a contract is open to two constructions, one of which will accomplish the intention of the parties, and the other of which will defeat such intention, or will make the contract meaningless, the former construction is to be preferred. Page on Contracts, Vol. 2, paragraph 1120.''

In *Mississippi Home Ins. Co.* v. *Adams & Boyle*, 84 Ark. 431, 106 S. W. 209, we find this language: ''It is our duty, in arriving at the intention of the parties, to give force and effect to all the provisions, and every word, if possible. The language, as a whole, should, if possible, be so construed as to make the apparently con-

flicting provisions reasonable and consistent, and so as not to give one of the parties an unfair and unreasonable advantage over the other.''

Appellees argue that that portion of the lease indicated as (b), *supra,* makes it assignable, and we agree. The language used ''that the assigns, transferees and heirs-at-law of the party of the second part (Meidert) and the assigns, transferees and heirs of any person or persons succeeding to the rights of the party of the second part (Meidert) herein shall enjoy all the rights and privileges, which will be conveyed unto the party of the second part (Meidert) by the terms of this agreement,'' clearly empowered Meidert to assign his lease and his assignee would succeed to his rights under the lease.

We see no conflict between this provision and provision (a), *supra.*

It must be borne in mind that a material part of the consideration which passed to Meidert under the partnership dissolution agreement, *supra,* was the lease to him of the Mint Liquor Store, which, with the option privileges, he was to have until November 1, 1950. We think not only that, in the circumstances, an assignment of the lease was contemplated by the parties but, as indicated, specifically provided.

We said in *The Leader Company* v. *Little Rock Railway & Electric Company,* 120 Ark. 221, 179 S. W. 358: ''In *Fort Smith Light & Traction Co.* v. *Kelley,* 94 Ark. 461, we quoted with approval from Thornton on Oil and Gas, § 477, and certain other authorities, wherein the rule was laid down that 'a grant to the company or its assigns is sufficient to authorize an assignment without further consent' of the other party to the contract.''

As to that part of the decree in which appellant was enjoined from operating a liquor store in the premises of the Mint Liquor Store following vacation of these premises by Bennie Johnson, we are unable to determine from the record whether Bennie Johnson was evicted from the premises or voluntarily surrendered possession

342

and opened up a liquor store across the street. If she were forced to move then, if she so desires, she should have the premises returned to her. Otherwise, the injunction against appellant's occupancy should be dissolved.

Accordingly, the decree is reversed and the cause remanded with directions to proceed in accordance with this opinion.