## FIRST AMERICAN NATIONAL BANK
of Nashville, Tennessee *v.* McCLURE
CONSTRUCTION CO. et al

78-334                                         551 S.W. 2d 550

### Opinion delivered May 21, 1979
(InBanc)

[Rehearing denied June 25, 1979.]

Barrett, Wheatley, Smith & Deacon, by: *Stephen Reasoner,*
and *Winchester, Marshall, Huggins, Charlton, Leake & Brown,* by:
*Stanley M. Huggins,* for appellant.

*Rhine, Rhine & Young,* by: *Robert E. Young,* for appellees.

DARRELL HICKMAN, Justice. This is an appeal from a foreclosure action decided by the Greene County Chancery Court. The only issue is usury. The appellant, First American National Bank of Nashville, Tennessee, sought foreclosure on three promissory notes, and accompanying deeds of trusts on Greene County land, it had acquired by assignment. The appellee, McClure Construction Company, had assumed the obligations of the instruments. Other parties were joined in the trial proceedings but are not parties to this appeal.

McClure raised the defense of usury to the appellant's action and the chancellor held the notes usurious. He found his decision was controlled by *Cagle* v. *Boyle Mortgage Co.,* 261 Ark. 437, 549 S.W. 2d 474 (1977).

First American appeals arguing the chancellor was wrong because the charge of interest, admittedly over 10%, was due to a mistake of fact, or a clerical error, and, therefore, was not legally usurious. We agree and reverse the chancellor's decree.

The facts are virtually undisputed. The original lender, Guaranty Mortgage Co. of Nashville, Tennessee, made three construction money loans in August, 1973, to John Watkins and his wife totalling $57,700.00. The three notes on their face showed an interest rate of 10% per annum. First American was assigned the notes in 1976, when Guaranty, their wholly-owned subsidiary, became a division of First American. No payments on principal or interest were ever made on the notes.

Guaranty and First American were primarily Tennessee companies; neither had an office or agent located in Arkansas. There was no evidence either regularly did business in Arkansas.

Gary McClure, the president and principal stockholder of the appellee, had to go to Memphis to assume the notes. He testified:

. . . I was required to go to Memphis to Guaranty Mortgage Office in Memphis and to cosign these notes. At that time they instructed me that this was a 10% note and they could not charge in excess of 10% in Arkansas. They informed me that they were aware of the law in Arkansas of 10% and this was the most that they could charge, if they charged a penny above that, that it would be usury.

Q. So they did speak to you on the matter of usury?

A. Yes, sir.

Q. And that they were aware of the Arkansas law on the matter?

A. Yes, they were, in fact I inquired about borrowing other monies from them and they were not interested in loaning money in Arkansas because they could not charge more than 10%.

Guaranty billed these accounts using a computer that calculated interest using a 360-day year and quarterly compounding, which is customary for Tennessee loans. It was undisputed that the effective interest rate charged by these statements was 10.531% per annum. There was evidence that neither Guaranty nor First American had a policy of computing interest the same way for any Arkansas loan.

The appellant argues the statements were the result of an honest mistake or clerical error; it was never intended to violate the strict usury provision of the Arkansas constitution, ARK. CONST. Art. 19, § 13.

The appellee relies, as the chancellor did, on our decision in *Cagle v. Boyle Mortgage Co., supra,* where we found usury in a similar situation.

The case of *Cagle v. Boyle Mortgage Co., supra,* is similar, and a cursory reading of it could lead one to conclude it controls the decision in this case. The similarities are that in both instances the notes were not usurious on their face; computerized statements using a 360-day year to compute in-

terest were mailed and received; interest was compounded monthly in the *Cagle* case, quarterly in this case; the interest charge on the statements exceeded 10% per annum; payments were never made on principal or interest.

However, the similarities end with these facts. In *Cagle,* the Tennessee corporation had an office in Arkansas with a branch manager; the lender regularly did business in Arkansas; the lender regularly used the 360-day year for all notes, whether made in Arkansas or Tennessee; the borrower complained of the excessive charge to the Arkansas manager and he replied he had nothing to do with computing the interest, it all came out of Memphis. Most significantly, the lender *had collected* the illegal interest from Boyle in a companion transaction. We concluded there had been no honest mistake, and there was intent to charge, reserve or collect usurious interest.

In this case the appellant offered proof that neither Guaranty nor First American did business regularly in Arkansas; they knew they could not charge interest using the 360-day year, compounded on an Arkansas loan; and they offered undisputed proof the lender wanted to avoid violating the Arkansas usury law. McClure corroborated this proof, as we have related. There was no evidence offered to refute the appellant's evidence; that leaves only the existence of the statements themselves as evidence of an intent to charge usurious interest. The chancellor did not make a specific finding of intent to make an unlawful charge; instead he simply found the *Cagle* case stands "on all fours with the case at bar. The Court is unable to distinguish any basic facts."

There must be an intent to charge, reserve or receive unlawful interest to constitute usury. *Garvin* v. *Linton,* 62 Ark. 370, 35 S.W. 430 (1896). It is the burden of one offering the defense of usury to prove such intent. *Cox* v. *Darragh Co.,* 227 Ark. 399, 299 S.W. 2d 193 (1957). The intent will not be presumed or imputed. *Davidson* v. *Commercial Credit Equipment Corp.,* 255 Ark. 127, 499 S.W. 2d 68 (1973).

A lender who makes an excessive charge through a mistake or ignorance of the fact it was excessive has no intent to unlawfully charge interest. *Davidson* v. *Commercial Credit Equip-*

*ment Corp., supra; Hinton* v. *Brown,* 174 Ark. 1025, 298 S.W. 198 (1927).

There is a distinction, although sometimes a fine one, between a mistake of fact and one of law. A lender who makes a mistake of law is not excused as one who makes a mistake of fact. *Brooks* v. *Burgess,* 228 Ark. 150, 306 S.W. 2d 104 (1957); *Ford Motor Co.* v. *Catalani,* 238 Ark. 561, 383 S.W. 2d 99 (1964).

We found the requisite intent to make an unlawful charge in *Cagle* v. *Boyle Mortgage Co., supra,* for the reasons we have enumerated above. Most of those significant facts do not exist in this case and we conclude the preponderance of the evidence is that there was no intent to make an unlawful charge; instead, the unlawful charge was a result of a mistake of fact.

We find no merit to appellees' argument the appellant failed to properly abstract the record according to Rule 9(d), Supreme Court Rules.

We reverse the chancellor's decree and remand the cause for proceedings consistent with this opinion.

Reversed and remanded.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. I concur in the results reached by the majority. However, I would state we are overruling *Cagle* v. *Boyle Mortgage Co.,* 261 Ark. 437, 549 S.W. 2d 474 (1977), and other cases along the same line of reasoning. Like the trial judge I cannot distinguish the facts in the present case from those in *Cagle.*

In both cases there was a note and mortgage bearing the stated interest rate of 10%. In each case it was argued that the computer printout containing the schedule of payments was in error in charging an interest rate above 10%.

The fact that in one case it was only done once and the other it had been done on other occasions is not sufficient to

distinguish the cases for me. This is very similar to the argument that one may be just a little bit pregnant. If one of these cases is usurious, so is the other. If one is not usurious, neither is the other. In my opinion we should call a spade a spade and overrule *Cagle,* supra. As it stands, the lawyers and the courts will just have to guess at which case we may decide to follow.