I. E. MOORE, d/b/a PULPWOOD
SUPPLIERS, INC. *v.* Donnie & Emma OWENS et ux

80-34                                           597 S.W. 2d 65

Supreme Court of Arkansas
Opinion delivered March 31, 1980
Rehearing denied April 21, 1980

*Sanford L. Beshear, Jr.,* for appellant.

*Jones & Petty,* for appellees.

DARRELL HICKMAN, Justice. This suit began when a second mortgage holder filed a foreclosure action against property of Donnie and Emma Owens located in Grant County. I. E. Moore, the appellant, who does business as a corporation called Pulpwood Suppliers, Inc., was joined as a party in that suit because he held the first mortgage. Moore filed a cross-complaint against the Owenses asking that the note he held and the first mortgage be foreclosed. A default judgment was granted to Moore.

The Owenses asked that the default judgment be set aside because they were not properly served, and it was set aside. The Owenses then claimed that the note should be cancelled because it was usurious. The trial judge found the note to be usurious and from that decision Moore files this appeal.

Even simplified this case is difficult. Donnie Owens was in the business of hauling pulpwood and he sold it through a middleman, the appellant I.E. Moore. In addition to being a dealer, Moore helped finance Owens, extending him credit over a period of years. Apparently Moore maintained several accounts for Owens. In 1975, Moore paid a note Owens had with the Grant County Bank and in consideration of that, and other debts, the Owenses gave Moore their note for $34,-422.25 and a mortgage on their property. Moore assigned this note to the Grant County Bank as collateral for a loan he had with the bank. It was reassigned to Moore before this suit. According to the evidence Moore presented, Owens was indebted to Moore for about $64,000.00 which included the $34,000.00 note. Moore tried to present evidence to the chancellor regarding all the transactions he had with the Owenses. For example, sometimes Moore withheld money from checks he gave to Owens but only Moore's copy of the check reflected that fact. Owens made several payments to

the Grant County Bank which the bank credited to the $34,-000.00 note. One payment credited by the bank was for $7,-000.00, which was the proceeds from a forced sale of a crawler tractor.

The defense of usury raised by Owens was not that the note was usurious on its face but that Moore gave no credit for payments which had been made to the bank. That is, that Moore, by giving no credit, was overcharging him and the overcharge must be considered as interest causing the rate to exceed 10%.

Moore argued that he did not consider any payments made to the bank as credits toward Owens' note but he considered them as credits toward the note Moore had with the bank, or credits toward the open account which he kept for Owens.

At first the chancellor indicated he would appoint a master to study all of Moore's records and come up with some findings as to what actually happened. That is, how much money was actually loaned or advanced to Owens over the years, how much was paid by Owens, and to what accounts or notes the credits were made or should have been made. However, the chancellor was finally persuaded that the issue before him was the note in question and he precluded further testimony regarding the other debts that Owens had with Moore.

According to the record, Moore paid the bank $18,-613.14 as a payoff of Owens' note and reacquired that note and mortgage. He sued Owens for $41,650.19, the face amount of the note plus interest. Based on the fact that Moore did not give Owens credit for the payments which the bank did, the chancellor concluded the note was usurious and that Moore actually intended to make an illegal charge. Consequently, the debt was declared invalid because of usury.

Moore, on appeal, raises three issues. First, he argues that the chancellor incorrectly set aside the default judgment which he had obtained on the note. Second, he argues the

court erroneously excluded testimony which was relevant to the issue of usury and failed to appoint a master as he indicated he would. Finally, he argues that the note was not usurious and there is no evidence to support the chancellor's finding to that effect.

We find the chancellor was clearly in error in finding usury and reverse the decree and remand the cause for additional proceedings. Simply because Moore failed to give Owens credit the bank may have, would not constitute usury. The note was not usurious on its face and a party who pleads usury has the burden to prove it by clear and convincing evidence. *Commercial Credit Plan, Inc.* v. *Chandler,* 218 Ark. 966, 239 S.W. 2d 1009 (1951). To sustain a claim of usury it must be shown that there was an agreement on the part of the lender to receive and the borrower to give a greater rate of interest than 10%. *Garst* v. *General Contract Purchase Corporation,* 211 Ark. 526, 201 S.W. 2d 757 (1947). The unlawful act of usury will never be imputed to the parties and it will not be inferred when the opposite conclusion can be reasonably and fairly reached. *Brittian* v. *McKim,* 204 Ark. 647, 164 S.W. 2d 435 (1942).

If the transaction is not otherwise usurious, filing suit for too much money is not usury. *Mid-State Homes, Inc.* v. *Knight,* 237 Ark. 802, 376 S.W. 2d 556 (1964). See, also, *Studdard* v. *Walter C. Hudson, Inc.,* 226 Ark. 903, 295 S.W. 2d 637 (1956).

It may or may not be that Moore actually made a mistake in failing to give Owens credit; or it may or may not be that Moore (by the way he kept his records), actually intended from the beginning to charge Owens an illegal rate of interest. The simple fact he did not give him credit cannot sustain a finding of usury.

Whether the chancellor on a retrial decides that a master is necessary to determine the facts in this case is a discretionary matter, as well as the question of who should bear the burden of the cost of a master. See, Rules of Civil Procedure, Rule 53. In any event, there are questions of fact to be resolved regarding the records of Moore; Moore should be given a fair opportunity to explain all his financial deal-

ings with Owens. Only then can a finding of intent be properly made regarding the usury issue. If, indeed, Moore's evidence reflects that he pursued a scheme to illegally charge Owens, then a finding of usury may be justified.

The appellant also argues that the chancellor improperly set aside a default judgment that he had obtained against Owens on the note in question.

We cannot say the chancellor was clearly wrong in this regard. Moore's cross-complaint was attached to a summons and complaint issued in the name of Lewis Shirron and Hazel Shirron as plaintiffs against Donnie Owens and Emma Owens and Alton Socia and Mattie Socia. The summons simply read that Donnie Owens was commanded to answer the complaint, within twenty days, which had been filed against him by the Shirrons and upon his failure to answer such complaint, it would be confessed. There was no mention at all in the summons of a cross-complaint of Moore. The chancellor was not clearly wrong in deciding that this was not service as contemplated by Rules of Civil Procedure, Rule 4(a) and 5(a). We distinguish this case from that of *Claibourne v. Smith Rice Mill Co.*, 181 Ark. 279, 25 S.W. 2d 1050 (1930), where the summons contained other information which could put the defendant on notice of a complaint.

Reversed and remanded.