SUPERIOR IMPROVEMENT COMPANY
v. MASTIC CORPORATION

80-117                                            604 S.W. 2d 950
Supreme Court of Arkansas
Opinion delivered September 29, 1980

472.

*Moses, McClellan, Owen & McDermott*, by: *Harry E. McDermott, Jr.*, for appellant.

*Patten, Brown, Leslie & Davidson*, by: *Robert B. Leslie*, for appellee.

FRANK HOLT, Justice. Appellant, a home improvement business, purchased certain materials from appellee, a home siding wholesaler. As the open account grew, appellee Mastic added service charges on the overdue amounts. Appellee filed this suit to recover the balance, $37,581.80, which included previously billed service charges totaling $1,382.08. The lower court, sitting as a jury, found appellee was entitled to recover the full amount sought. For reversal appellant contends the trial court erred in finding the charges were not usurious and, further, in finding appellant had failed to prove the materials were damaged as a setoff.

The appellee's monthly statements showed the following terms: "Past due amounts will be subject to service charges. EFFECTIVE ANNUAL RATE 12% OR MAXIMUM ALLOWED BY LAW . . . net 30 days." The materials were purchased over a period of months from October 25, 1977, to March 23, 1978. The first service charge, billed by separate invoice on February 20, 1978, was $241.83, which is 1% of $24,183.36, the amount then over 60 days old. By a separate invoice in April, $241.83 was added as a March service charge. Both service charges were later included in the April monthly statement. The April and May service charges were $449.21 each, or 1% of the account 60 days past due each month. These service charges were reflected on the June monthly statement. The June service charge of $370.14, which was again 1% of the amount 60 days past due, was cancelled, however, when the account was turned over to the company's attorney. The June monthly statement reflected a payment of $10,000 with the resulting balance. The service

charges were imposed at varying intervals between invoice date and billing date.

The appellant argues that once the service charge was billed, it was billed as that particular month's service charge and was based on 1% of the amount past due. Consequently, on a per annum basis, the interest charged would be 12% or in excess of the 10% legal rate in Arkansas. Appellant also adduced evidence from a C.P.A. that the service charge on a monthly or daily basis exceeded the lawful rate of 10%.

The appellee admits its computer is programmed to charge its customer 1% per month on past due accounts or a 12% annual interest rate since this ia legal rate of interest in most states where it does business. Appellee denies, however, that the charges are usurious because its method of billing was a "partial billing" based on a ledger-type account. In support of this policy, appellee's assistant treasurer and credit manager testified:

> ... [T]he first sixty days during which Mastic [appellee] was entitled to receive Ten Percent there was no billing whatsoever, so that when the first billing came out, the actual effective rate at that point would have been just roughly about Six Percent and then as each month goes by you add an additional partial billing, it gradually moves up toward the allowable rate of Ten Percent. This is why we put a flag on the account and start monitoring it at the sixth partial billing in order to be sure that the total billing for service charges which have been rendered to the customer does not exceed that which they would be entitled to at the Ten Percent rate.

The account was turned over to its attorney on the sixth month (June), and this action resulted. Appellee sought to recover the unpaid service charges, except for June, as part of the total balance past due. As of that time, according to appellee's calculations, the annual rate billed appellant was at most 8.7% on the total amount due.

To constitute usury, the evidence must be clear and convincing that there was an intent to charge more than 10% in-

terest on the open account. *Bunn Lbr. Co.* v. *Weyerhaeuser Co.*, 268 Ark. 445, 598 S.W. 2d 54 (1980). Here the case was tried as an issue of fact by a circuit judge, sitting as a jury, after the effective date of Rule 52 of the Arkansas Rules of Civil Procedure. Therefore, the standard of review on appeal is not whether there is any substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous (clearly against the preponderance of the evidence). *Taylor* v. *Richardson Const. Co.*, 266 Ark. 447, 585 S.W. 2d 934 (1979). It is unnecessary that both parties intend that an unlawful rate of interest be charged; if the lender alone charges or receives more than is lawful, the contract is void. *Cagle* v. *Boyle Mortgage Co.*, 261 Ark. 437, 549 S.W. 2d 474 (1974). The intent required is not an intent to violate the usury laws, but an intent to receive or reserve a rate of interest that proves to be usurious. *First Amer. Nat'l. Bk.* v. *McClure Const. Co.*, 265 Ark. 792, 551 S.W. 2d 550 (1979).

The appellee argues that the amount of interest charged did not exceed the maximum amount allowed by law when computed over the entire length of time of the charges, and any method employed to compute these charges is irrelevant if the dollar amount charged does not exceed the dollar amount that appellee is entitled to charge on all past due balances when figured on an annual basis. Also no contract existed between the parties for a usurious amount of interest. Therefore the usury penalty is not applicable.

We first observe that we are unimpressed by appellee's argument that no contract actually existed on the open account between the parties. See *Redbarn Chemicals* v. *Bradshaw*, 254 Ark. 557, 494 S.W. 2d 720 (1973); and *Bunn Lbr. Co.* v. *Weyerhaeuser Co., supra.* Appellee's reliance on *Winkle* v. *Grand Nat'l. Bank*, 267 Ark. 123, 601 S.W. 2d 559 (1980) is misplaced. It contends that the "life of the loan" concept was applied there and is applicable here. There, however, notes and security agreements were in issue. Here, there is no way to determine the "life of the loan" since this is an open account. *Redbarn, supra*, and *Bunn, supra*, deal with an open account. In *Redbarn* we said:

. . . . Redbarn introduced proof tending to show that if all

its twelve monthly finance charges during the calendar year 1970 were added together, the overall interest rate would be only 9.69%, despite the excessive charge [1%] in April. That theory of the case is not supported by the proof. There is no suggestion that interest was charged by the year rather than by the month. In fact, an annual charge would have been impossible, because the amount of the open account varied from month to month as debits were added and credits were given. The creditor's intention was undoubtedly to impose a finance charge upon each monthly balance. Hence the present argument is actually an effort to retroactively purge the account of the taint of usury which cannot be done . . .

Here the balance of the open account, billed monthly, varied as debits were added, including service charges. Only one payment was made which was reflected on the June statement with the resulting balance. Further, no evidence existed in either *Redbarn* or here that the debtor knew the charges were being made on any basis other than monthly. Here the terms of the interest appearing on the monthly statements merely gave notice to the purchaser that a service charge or interest would be assessed, which would be 12% "or maximum allowed by law." There is nothing in the invoices, monthly statements, or other evidence that appellant was ever made aware that appellee's practice was to partial bill and eventually flag the account at the end of 6 or 7 months to avoid billing service charges which would total in excess of the 10%, the lawful rate, or that a higher rate of interest would be applied by appellee in the earlier months and then decreased as the rate of interest neared the maximum allowed by law.

As indicated, here there were monthly computerized statements billing appellant for a 1% service charge. The monthly statements included the amounts billed on these separate invoices. Suit was filed to collect these monthly service charges as part of the total balance due. Despite appellee's testimony that its method of billing was a "partial billing" and its practice was to "flag" the Arkansas accounts to avoid a 12% annual interest, the evidence is clear and convincing that appellee sought by its monthly billing and this

action to collect 1% per month on past due open accounts. Certainly the debtor, appellant, was unaware of appellee's silent intention to "partially" bill and "flag" its account to avoid exceeding the legal rate of interest. Furthermore, we reject the practice of appellee as evidenced by the invoices reflecting the billing of service charges. The credit manager of appellee testified that they used a system of underbilling during the first of the period as an incentive to pay the account. Although the invoice states "net 30 days", the witness explained by an example that they customarily did not bill a service charge for some two and one-half months after he claimed that the accrual of interest actually began. He attempted to explain the inconsistency by saying that appellee "waived" the service charge if the account was paid before the service charge was billed. We disapprove this double system as a method of avoiding usury laws of this state. In the circumstances, we hold the transaction constituted usury and, therefore, the trial court's finding to the contrary was clearly erroneous.

In view of this determination, it is unnecessary to consider appellant's contention that the evidence justified a setoff for damaged materials.

Reversed and dismissed.

FOGLEMAN, C.J., HICKMAN and MAYS, JJ., dissent.

JOHN A. FOGLEMAN, Chief Justice, dissenting. It appears to me that this court has established a standard of review in usury cases that is different from that applied in other cases. The appellant had the burden of showing clearly that appellee contracted for, extracted or received usurious interest. *Poole* v. *Bates*, 257 Ark. 764, 520 S.W. 2d 273; *Textron, Inc.* v. *Whitener*, 249 Ark. 57, 458 S.W. 2d 367. We have said that the plainest principles of justice require that the defense of usury be clearly shown. *Arkansas Real Estate Company* v. *Buhler*, 247 Ark. 582, 447 S.W. 2d 126. The circuit court held that appellant had failed to prove its affirmative defense and counterclaim, which included allegations raising the issue of usury. This court should not overturn that holding unless it is clearly against the preponderance of the evidence. *Winkle* v.

*Grand National Bank*, 267 Ark. 123, 601 S.W. 2d 559 (1980).

The usury charge, an affirmative defense and counterclaim in appellee's suit to recover for merchandise sold to appellant, allegedly was imposed by appellee's "Levying" service charges of: $241.83 on an unpaid balance of $24,183.36 as reflected by an invoice dated February 20, 1978, $241.83 on a balance of $25,298.36 as reflected by an invoice dated April 4, 1978, $449.21 as reflected by an invoice dated May 30, 1978, and $370.14 as reflected on an invoice dated June 23, 1978.

The evidence showed that the service charges reflected by appellee's invoices amounted to a total of $1,752.22. Each of the numerous statements sent appellant by appellee bore the typed (or computer printed) statement, "NET 30 DAYS." They also contained the following statements: "PAST DUE AMOUNTS WILL BE SUBJECT TO SERVICE CHARGES. EFFECTIVE ANNUAL RATE 12% OR MAXIMUM ALLOWED BY LAW." This clearly showed that the terms of sale of the goods called for payment of the net price shown by each invoice within 30 days, that service charges would be made on past due accounts and that the effective rate was either 12% or the maximum allowed by law. All appellant had to do to avoid any service charge was to pay the account when it became due. This, in itself, should be a sufficient basis for affirming the judgment. *Harris* v. *Guaranty Financial Corp.*, 244 Ark. 218, 424 S.W. 2d 355; *Carney* v. *Matthewson*, 86 Ark. 25, 109 S.W. 1024.

It is clear from the testimony and exhibits presented that invoices were issued for each charge made and that the monthly statements rendered by appellee listed all unpaid invoices issued but indicated separately the invoices that were past due, i.e., those which had been issued more than 30 days prior to the date of the statement. The statements included *only* unpaid charges.

According to appellee's assistant treasurer and credit manager, the net charge shown on an invoice was due 30 days after the date of the invoice, as clearly indicated on the

statements, but the company had a monitoring system to assure compliance with the statement that service charges would be billed at the rate allowed by law. The first billing of service charges would go out more than 60 days after invoices had been sent out. Each billing was for the amount of a flat 1% of past due items, but would result in a charge less than that allowed by law, because of the lapse of time between the date the invoices were due and the date of billing. As additional billings went out, the company checked them against the total allowable under the law of the state having jurisdiction in order to see that the billing did not exceed the amount allowed by law. Service charges were billed by a computer, but Arkansas and Tennessee accounts were monitored so the computations could be checked to see that the allowable maximum had not been exceeded. This witness said that the company had determined that after nine months, the effective rate would amount to 7-1/2%, so, between the sixth and seventh months, they checked by manual computations to be sure there was no problem. He said that the total service charges allowable as of May 30, 1978 would have been $1,706.21, but that appellant had been billed for only $1,382.08 in service charges. He also testified that on June 23, 1978, the total interest allowable would have been $2,023.14 but the total billings were only $1,752.22.

The only evidence that the service charges were usurious was the testimony of an accountant who found excessive interest charges by assuming that the service charge was applicable only to an invoice that was over 60 days old. His explanation of his reason for doing so is rather baffling because he said that there was no pattern on the time for the charge and that computations of service charges based on either amounts due 30 days from the due date or on invoices that were over 60 days old resulted in the same charge each month. His efforts to explain his 60-day assumption are absolutely contrary to the statements on the statements rendered. Accordng to this witness, "net 30 days" meant that there was no charge for 30 days and that 30 more days had to expire before a charge could be imposed. There was no basis for this assumption. The trial court correctly stated, and the witness once agreed, that there could be a charge, computed on the basis of one day, on the thirty-first day. But the

witness could not answer "yes or no" when asked if that was what he had computed. The accountant, even then, figured the rate of interest only on the basis of the particular month in which an invoice for interest was issued. He ignored the fact that no charge was made during April, even though the balance past due on April 22 was exactly the same as the balance due on March 18. He positively stated that each month stood on its own in his calculations.

Neither the act of usury, nor the intent to charge, reserve or receive unlawful interest, will be presumed, or imputed, to the parties or inferred if the opposite conclusion can be fairly and reasonably reached. *First American National Bank* v. *McClure Construction Co.*, 265 Ark. 792, 581 S.W. 2d 550; *Davidson* v. *Commercial Credit Equipment Corp.*, 255 Ark. 127, 499 S.W. 2d 68; *Commercial Credit Plan, Inc.* v. *Chandler*, 218 Ark. 966, 239 S.W. 2d 1009; *Cammack* v. *Runyan Creamery*, 175 Ark. 601, 299 S.W. 1023; *Briggs* v. *Steele*, 91 Ark. 458, 121 S.W. 754; *Key* v. *Worthen Bank & Trust Co.*, 260 Ark. 725, 543 S.W. 2d 496; *McCoy Farms, Inc.* v. *McKee*, 263 Ark. 20, 563 S.W. 2d 409, cert. den. 439 U.S. 862, 99 S.Ct. 184, 58 L.Ed. 2d 171; *Pulpwood Suppliers, Inc.* v. *Owens*, 268 Ark. 324, 597 S.W. 2d 65 (1980).

Appellee's officer used the correct test for usury, i.e., was the debtor required to pay more over the term the debt was outstanding than he could legally have been required to pay? *Davidson* v. *Commercial Credit Equipment Corp.*, supra. This is exactly the method used in *Parks* v. *E. N. Beard Hardwood Lumber, Inc.*, 263 Ark. 501, 565 S.W. 2d 615, where we affirmed a summary judgment holding that the interest charges were not usurious. Actually *Parks* is authority supporting the trial court's judgment in this case. The majority has not attempted to distinguish it. I submit that it cannot be distinguished. Certainly, there is a stronger case here than there was in *Parks* in view of the testimony of the company official as to the monitoring system used by appellee and to appellee's clear recognition on its statement forms that the transactions were subject to the legal maximum interest rate. The trial court believed this witness. Is the majority saying that his testimony was incredible?

The statement as to the service charge is not a disavowal or disclaimer. Obviously, it appeared on the statements because appellee did business in Arkansas and Tennessee and knew of the limitations in those states. It is a limitation on the maximum service charge. As such, it was at least a strong circumstance to be considered by the trier of facts. *Lyttle* v. *Mathews Investment Co.*, 193 Ark. 849, 103 S.W. 2d 47. Actually its impact is greater than a mere circumstance. It should be given the same effect as was given a like statement in *Taylor* v. *Van Buren Building & Loan Ass'n.*, 56 Ark. 340, 19 S.W. 918. There we said:

> ***[I]n the three mortgages involved in this case there could not be usury, because in each it is provided that "it is also understood that in no instance shall any claim be made by said building association for any interest or any moneys mentioned herein, or any money in lieu of interest, which shall exceed the rate of ten per cent per annum." It would seem that there can be no usury in a contract that expressly provides that no unlawful interest shall be paid, unless in fact the transaction was a device or cloak to cover usury. ***.

Even if it could be said that the contract is ambiguous, it is the duty of the courts to so construe a contract so that it would be legal, if it is subject to one construction that would make it legal and another that would render it illegal.

The penalty for usury is forfeiture of both principal and interest. *Citizens Bank* v. *Murphy*, 83 Ark. 31, 102 S.W. 697. Every effort should be made to interpret a contract favorably to its enforcement and to prevent a forfeiture. *Scrinopskie* v. *Meidert*, 213 Ark. 336, 210 S.W. 2d 281. When there are two probable conflicting interpretations of a contract, and one would render the contract unlawful and the other lawful, the courts should adopt the latter construction. *Gauss* v. *Orr & Lindsey*, 46 Ark. 129. It is the duty of the courts, when contracts are fairly susceptible of more than one construction to adopt a construction which will not work a forfeiture. *Singer Manufacturing Co.* v. *Brewer*, 78 Ark. 202, 93 S.W. 755; *Scrinopski* v. *Meidert*, supra. As between reasonable constructions, one of which would make the contract unenforceable

and the other would make it enforceable, the latter will be preferred. *Hastings Industrial Co.* v. *Copeland*, 114 Ark. 415, 169 S.W. 1185.

The majority does not seem to rely very heavily on *Redbarn Chemicals, Inc.* v. *Bradshaw*, 254 Ark. 557, 494 S.W. 2d 720. It is easily distinguished. In the first place, we there affirmed a circuit court's finding of usury, when review of a trial judge's findings called only for a determination whether they were supported by substantial evidence. Furthermore, in that case monthly computerized statements including a service charge had been sent to the debtor for a full year before the charge in question there was ever imposed. On the other hand, the statements clearly show that the service charge here was to be based upon an annual rate, not a monthly one. That was not the case in *Redbarn*.

I do not see how this court can avoid affirming the circuit court judgment.

I am authorized to state that Mr. Justice Hickman and Mr. Justice Mays join in this dissent.