Herman KINARD, et al *v.*
CACHE RIVER BAYOU DeVIEW
IMPROVEMENT DISTRICT

84-233                              686 S.W.2d 407

Supreme Court of Arkansas
Opinion delivered March 18, 1985

*Woodruff & Huckaby,* for appellant.

*Frierson, Walker, Snellgrove & Laser,* by: *G. D. Walker,* for appellee.

JACK HOLT, JR., Chief Justice. This case involves a petition filed by the commissioners of the Cache River Bayou DeView Improvement District seeking permission in circuit court to alter the plans for the district. The petition was granted and this appeal is brought by the landowners who oppose the proposed changes. Our jurisdiction is under Sup. Ct. R. 29(1) (c) as we are being asked to interpret a statute.

The improvement district was established by court order entered on July 21, 1958, pursuant to Ark. Stat. Ann. §§ 21-1001 to 21-1003. Its purpose was to channelize the Cache River and Bayou DeView to create a large channel or ditch to drain an extensive area of land surrounding the rivers. The Corps of Engineers made plans and estimated costs for the project but it was never completed and work ceased.

The commissioners for the district petitioned the circuit court in 1983 for an order extending and enlarging the powers of the improvement district to include those rights, powers and privileges of drainage districts as provided by Ark. Stat. Ann. §§ 21-501 to 21-581. The commissioners sought the order because the rivers were not navigable, and the lands in the district were suffering from floods and lack of drainage because of the failure to complete the original project.

The extension and enlargement of powers was sought pursuant to Ark. Stat. Ann. § 21-1026 (Supp. 1983) which provides:

By such Order of the Circuit Court the powers of such an improvement district shall be enlarged and extended

to embrace all the powers, rights, and privileges of drainage districts organized under the existing laws of the State of Arkansas. . .The purpose of this extension of powers shall be to complete the improvements contemplated by the Act of Congress and the plans of the Corps of Engineers. . .which were filed with and made a part of the petition for the establishment of the improvement district. . .

Protests, which included a claim that the altered plans do not complete the improvements contemplated by Congress as required by Ark. Stat. Ann. § 21-1026, supra, were filed by landowners in Poinsett County. After a hearing on October 4, 1983, the trial court granted the petition to acquire powers of drainage districts and ordered the commissioners to proceed with the steps required by law for determination of the work to be done under the proposed project and for the assessment of benefits.

Ark. Stat. Ann. § 21-1025 (Supp. 1983) provides:

The order of the Circuit Court enlarging the powers of the district shall have all the force and effect of a judgment. Any owner of real property within the district may appeal from said judgment within thirty (30) days after the same has been made, but if no appeal is taken within that time, the judgment authorizing the enlargement of the powers of the district shall be deemed conclusive and binding upon all the property within the boundary of the district and upon the owners thereof. . .

Nevertheless, the order of October 4, 1983, was not appealed. Subsequently the commissioners filed a petition for alteration of the plans of the district on March 28, 1984. The petition was filed in accordance with Ark. Stat. Ann. § 21-517 (Repl. 1968) which states:

The commissioners may at any time alter the plans of the ditches and drainage [drains], but, before constructing the work according to the changed plans, the changed plans, with accompanying specifications,

showing the dimensions of the work as changed, shall be filed . . . and notice of such filing shall be given. If by reason of such change of plans, . . . any property owners deem that the assessment on any property has become inequitable, they may petition the county court.

With the petition, the commissioners filed a proposed work map and cost schedule detailing the changes. The plan provided for the removal of blockage, drifts, trees, stumps, and silt from the stream beds. The petition stated that the improvements originally proposed would be too expensive for the district's present assets and that therefore, "It has been determined by the Board of Commissioners that the altered plans will provide relief presently needed by the landowners of the District and will relieve a considerable part of the existing flood damage which occurs periodically, at a cost within the means of the District."

After hearing testimony on behalf of the commissioners and the opposing landowners, the court on May 2, 1984, approved the alteration of plans and directed the commissioners to proceed with the plans and to reassess the property. The court further provided that the property owners would be given an opportunity "to appear and present their view for or against the proposed assessment of benefits." This appeal results from the court's May 2, 1984 order approving alteration of plans, rather than the previous order of October 4, 1983, enlarging the district.

The abstract is deficient in several aspects, making it difficult for this court to assess the issues raised by this appeal. However, we will address the merits upon the materials presented utilizing the points relied upon by appellants.

I.

APPELLEES HAVE FAILED TO COMPLY
WITH ARK. STAT. ANN. § 21-1026

Initially the appellants contend that the appellees failed to comply with § 21-1026, supra, inasmuch as the statute

provides that the purpose of an extension of powers "shall be to complete the improvement contemplated by the Act of Congress and the plans of the Corps of Engineers." Yet it is alleged that the plans as altered do not complete the Corps' original plan.

This point raised by the appellants, that the altered plans do not comport with the original purpose of the project, is not timely made. The same argument was presented to the trial court by the appellants in their amended protest to the petition for enlargement and was the subject matter of the earlier hearing on October 4, 1983, which resulted in the court entering final judgment in favor of appellees. The appellants, protesting landowners, were entitled to appeal from such a ruling within 30 days of the date the judgment was entered. § 21-1025. No appeal was taken from this ruling. Instead an appeal was filed seven months later from the court's order of May 2, 1984, approving the alteration. Likewise, appellants did not object to the petition for alteration based on the appellee's failure to comply with § 21-1026. This argument therefore cannot be resurrected on appeal by the appellants in their protest to the petition for alteration. Issues raised for the first time on appeal are not considered. *Green* v. *Ferguson*, 263 Ark. 601, 567 S.W.2d 89 (1978). The trial court is therefore affirmed on this point.

## II.

## APPELLEES HAVE FAILED TO SHOW THE PROPOSED PLAN IS IN THE BEST INTERESTS OF THE LANDOWNERS

The appellants argue that the appellees have failed to show by a preponderance of the evidence that the proposed plan is in the best interest of the owners of the real property within the district.

The appellants state that no landowner other than a commissioner testified on behalf of the appellees' plan, while several landowners testified in opposition. This statement overlooks the fact that the nine commissioners

who presented the petition to the court calling for extension and enlargement of this district are landowners from each of the counties making up the district. § 21-1003. By comparison, the opposing landowners who testified came from only three of the same nine counties.

In order to sustain appellant's contentions, we must find that the trial judge's findings were "clearly erroneous (clearly against the preponderance of the evidence) and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ark. R. Civ. P. 52(a); *Superior Improvement Co.* v. *Mastic Corp.*, 270 Ark. 471, 604 S.W.2d 950 (1980); *Ford Motor Credit* v. *Yarbrough*, 266 Ark. 457, 587 S.W.2d 68 (1979).

The trial judge in his findings labored over the stormy history of the Cache River Bayou DeView project. He gave considerable thought to expert testimony that current plans will give partial relief to landowners in the district by getting at least 50% of the flood waters off of the land and out of the area in question, as opposed to the testimony of the protesting landowners who sincerely feel that the project is of little or no value and that it should be stopped, thus maintaining and preserving the status quo. Weighing the interests of all parties, the trial judge stated:

> There are other landowners, since the evidence says there is nearly a million acres involved here, that have an interest in what the Court does today. I must be concerned with and take into consideration their interest and the overall ultimate benefit, if a benefit is to be derived from this plan.

In further deliberations, the court concluded:

> It is a plan which will, in the Court's humble opinion, improve, enhance and benefit the vast majority affected within the area.

By approving the plan, we cannot say the trial court clearly acted against the evidence. *Harrell Motors, Inc., et al* v. *Flanery*, 272 Ark. 105, 612 S.W.2d 727 (1981). "In

reviewing the sufficiency of the evidence on appeal to support the decision of a trial judge sitting as a jury, we consider the evidence in the light most favorable to the appellee and affirm unless the trial court's decision is clearly erroneous. . . . It must be remembered that the credibility of the witnesses is determined by the fact finder, not this Court." *Orsby* v. *McGee*, 271 Ark. 268, 608 S.W.2d 22 (1980). *See also, Bass* v. *Koller*, 276 Ark. 93, 632 S.W.2d 410 (1982).

Our ruling does not preclude the opposing parties, many of whom are named in supporting petitions which are part of the trial record, from presenting their views on the tax assessments of their property when the commissioners make that determination. Ark. Stat. Ann. § 21-1028 (Supp. 1983).

Affirmed.

HICKMAN and HAYS, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. This is a suit of vital public interest to all Arkansans. It concerns the Cache River and Bayou DeView and is still another attempt to alter the natural state of those streams and to destroy what little remains of the benefits they offer Arkansas as a habitat for wildlife. The drainage area affected is one of the prime locations in Arkansas for waterfowls; consequently, it is one of the best duck hunting areas in the state.

The reasons for the proposed change is to make it possible for some landowners in the northern part of the basin to clear and cultivate their lands. This was clearly stated in a question by counsel for the district when he said: "But what we are trying to do is make it possible for a man that wants to clear his [land] can clear it. . . ."

A preponderance of the evidence revealed that the proposal should be rejected for various reasons. Some landowners opposed it because of the estimated cost of $3,500,000, the vague plans by the district, the lack of approval by the Corps of Engineers, the Environmental Protection Agency and all other interested agencies, and

because more questions were raised than were answered. Others simply felt that the Cache River needed to be left alone, that it did not need "improving;" yet others, more alert to the potential damages to the natural state of the area, envisioned the plan as draining the area and damaging the "wet" areas protected by the Environmental Protection Agency. One witness from Newport said that the plan would essentially dry up the Cache River in his area.

John Eldridge, a resident of Woodruff County and a landowner on Bayou DéView and the Cache River, pointed out that the value of land in the area was greater in its natural state than cleared. He said:

> With the advent of duck hunting and fishing in that area the land from a purely economical standpoint has become more valuable, believe it or not, as wild land than cultivated land. I won't get into the mechanics of that, but we are diametrically opposed, at least I am, and I think I am representing a number of people in my county to any sort of work being done on existing so-called channel.

*  *  *  *  *  *

> I don't own just wood land, I own some other cultivated land and my tract of wood lands means more to me really than my cultivated land and I suspect it is more valuable. So we just sort of wish that the project would go away and I realize it is not.

The real issue was put in focus by the following question and the answer given by Eldridge:

> Q. I said you and those who are in your position are demanding that your duck hunting rights be preserved at the expense of the others who are being flooded and don't use them for duck hunting; is that true?

> A. I look at it a little bit different. They have got clear land and infringe upon our rights to keep it like it is to be perfectly frank with you, so it sort of depends on

whose ox is gored. And we feel like our ox has been gored because we are taking it as God made it and we would like to keep it that way.

The only real evidence in support of the district was the testimony by its engineer. He emphasized in his written report that "[t]his program will not and is not intended to be a flood control project." Yet the main thrust of his testimony was that "we will increase the water runoff some fifty to sixty percent; two: we will have a navigable stream where fishermen and you and your sons can get into a boat and you might be able to motorize yourself up Cache River to Grubbs or thereabouts." That is flood control. He said there would be no dredging, but, according to him, there might be some removal of sandbars. The operation was primarily intended to remove three large log jams or blockages in the river.

It is undisputed that the Arkansas Game and Fish Commission, which is a landowner in the area, has not consented to the proposal; neither has the Corps of Engineers nor the Soil and Conservation Agency. In fact no agency involved in the long history of the Cache River has consented to this proposal. However, there are inferences that there also may be no real objections by these agencies to the proposal. Only one landowner testified in favor of the proposal. Yet the trial court was convinced the project should be approved. It said:

It is the opinion of the Court that the modified and limited plan not to change the channel, not to increase the depth, but merely to remove those blockages and obstructions along the existing water route is a reasonable plan. It is a plan which will, in the Court's humble opinion, improve, enhance and benefit the vast majority affected within the area.

The majority addresses mostly the legal aspects of this case and has fairly set forth the questions raised. I cannot disagree that it appears that the appellee has not been as diligent as it could have been in pursuing its case. However, in a case of public interest, we are not bound by the usual rules of appellate procedure. *Arkansas State Nurses Associa-*

*tion* v. *Arkansas State Medical Board,* 283 Ark. 366, 677 S.W.2d 293 (1984).

If there was ever a case of public interest, it is this one; not only are a million acres of Arkansas land affected by this decision but also at issue is what will be preserved of the natural state of the Cache River and Bayou DeView. The evidence is persuasive that little benefit will be gained by the proposal. When the interest of all the landowners along the Cache River and Bayou De View are considered, together with the interests of those who enjoy these rivers, it is not even a close question. Those streams ought not to be sacrificed for a few crops on land that is not naturally suitable for cultivation. Ironically, those landowners who seek to use this land as they see fit, by controlling flooding, want someone else to pay for changing the river. There is, of course, more at stake than just the narrow interests of some landowners and duck hunters. Essentially, Arkansas' future is at stake because the quality of life here will determine our future. The distinction Arkansas has to offer its residents and visitors is its streams and forests. If those are destroyed, we will lose our most valuable natural asset. Besides the narrow interests of the parties, we have an obligation to consider the irreparable effects of our decision on our state. The treasure of those streams is a legitimate consideration which must weigh in the outcome of this case.

Moreover the appellants have raised a legal question with merit regarding the authority of the district to make such a proposal. Ark. Stat. Ann. § 21-1026 (Supp. 1983) extends the powers of the district to include the powers of a drainage district created under the general drainage district laws of this state, such as the power to alter the original plans. However, this extension of powers is limited to the sole purpose of completing the improvements provided for in the original plan enacted by Congress and drafted by the Corps of Engineers. The proposed changes are in opposition to the Corps' plan. The Corps' plan was to channelize the river and streams, changing the channel and increasing the depth. The proposed changes are to clear the waterways of obstacles. The proposal presented here is clearly contrary to the Corps' plan. Therefore, the proposed changes are not

for the purpose of completing the Corps' plan, but to alter the natural state of the district, and, as such, are not authorized under Ark. Stat. Ann. § 21-1026 (Supp. 1983).

I would reverse the judgment.

HAYS, J., joins in this dissent.