SAMMONS-PENNINGTON Co. *v.* HARRY H. NORTON ET AL

5-3992                                        408 S. W. 2d 487

Opinion delivered November 7, 1966

[Rehearing denied December 12, 1966.]

*Switzer & Griffin,* for appellant.

*John F. Gibson* and *James L. Sloan,* for appellees.

CARLETON HARRIS, Chief Justice. Appellees, Harry H. Norton and Thomas M. Mann, purchased all assets of the Graham-Wilson Company, consisting mainly of coin operated music machines, and Sammons-Pennington Company, appellant herein, financed the transaction for appellees, as hereinafter set out. On February 15, 1964, appellees executed a conditional sales contract and note in the amount of $15,943.05, plus a finance charge of $2,574.79. We shall refer to these instruments hereafter as Contract No. 1. A short time thereafter, Norton

advised the company that the contract and note were unacceptable for the reason that the payments exceeded the sum of $100.00 per week, and appellees did not desire to pay more than this amount, including interest. Appellant company then prepared a new contract and note to be used in lieu of Contract No. 1 (apparently using the same date), which provided for weekly payments over a period of 192 weeks, or 44.3 months, payments being set at $100.00 per week. We shall refer to these instruments as Contract No. 2. The paper was subsequently sold to Walter E. Heller Company of Chicago, the finance company for Sammons-Pennington, appellant guaranteeing payment. According to the evidence, this was the first time that appellant had granted a loan for this long a period of time; theretofore the company had set a maximum term for a loan of this type at 36 months.[1] George W. Sammons, President of Sammons-Pennington Company, and who resides in Memphis, testified that he knew that the legal rate of interest in Arkansas was 10% simple interest, but he did not know how to figure the amount under the new contract; accordingly, he called the Walter Heller Company to ascertain the correct amount to be charged as interest. The finance company, using "Lake's Monthly Installment and Interest Tables," gave him the figure of $3,182.64 for interest, which was added to the principal sum of $15,943.05. On August 1, 1964, Mann and Norton entered into another conditional sales contract with appellant covering the purchase of additional equipment, the note being in the amount of $1,637.71, which included carrying charges of $227.71. This note was to be paid over a period of 36 months, the first 35 installments in the amount of $46.00 each, and the final installment being in the amount of $27.41. We shall hereafter refer to these instruments as Contract No. 3. After appellees defaulted in six payments, appellant instituted suit in June, 1965, in the Ashley County Chancery Court to recover on Contracts 2 and 3, seeking judgment in the amount of $13,220.79, together with interest from Feb-

---

[1] A 36 months term would have meant that the payments were $130.00 per week.

ruary 1, 1965. Appellee Norton answered, asserting that Contract No. 2 was usurious, and accordingly void, and he contended that both contracts (Nos. 2 and 3) should be cancelled, and title to all property involved should be vested in him.[2] On trial, the Chancellor found that Contract No. 2 was void, because of usury, but that the August, 1964, contract (No. 3) was valid, and judgment was given to appellant for the balance due under that agreement. From that portion of the decree holding Contract No. 2 void, cancelling same, and voiding the lien, appellant brings this appeal.

We have reached the conclusion that this decree should be reversed, though it is stipulated that the amount of interest called for under Contract No. 2 was an overcharge (in excess of 10%) of between $57.00 and $60.00. It might be stated that the Chancellor was not without case authority in reaching his determination, and he cited several cases in a comprehensive opinion in support of his findings. Appellees mainly rely upon our cases of *Ford Motor Credit Company* v. *Catalani,* 238 Ark. 561, 383 S. W. 2d 99, *Brooks* v. *Burgess,* 228 Ark. 150, 306 S. W. 2d 104, and *Holland* v. *Doan,* 228 Ark. 340, 307 S. W. 2d 538. Appellant relies principally upon our case of *Cox* v. *Darragh Company,* 227 Ark. 399, 299 S. W. 2d 193, although other cases are also mentioned in appellant's brief. Actually, it would seem that we have two lines of cases, the line of demarcation between usurious and nonusurious contracts being rather slight. It appears that, in determining whether a usurious charge has been made, all attendant circumstances must be taken into consideration. When this is done, we think it is plain that the overcharge in the instant litigation was the result of an error, made in good faith, rather than being based on an intent to violate the usury law. In the first place, there is no question but that the first contract prepared (Contract No. 1), which called for the retirement of the debt in 36 months, was a valid contract, *i. e.,* there was no usurious charge. The testimony by Sammons, undisputed in the record, was that the

[2]Mann did not employ an attorney, but appeared *pro se.*

company had never before granted a loan for a term of more than 36 months. Sammons testified that, in order to satisfy appellees, he agreed to extend the time for a sufficient period to enable appellees to make payments of exactly $100.00 per week. Sammons then stated:

"* * * I put in a call to my finance man, the man that buys my paper, the Walter E. Heller Company, in Chicago and told him what my deal was and due to the fact that we had a tremendous amount of bad luck down in this area with people trying to pay us and he said that he would make an exceptance to the rule and extend this greater than a 36 months period."

Not knowing how to figure the interest on the new term, he sought the advice of the Heller Company, and requested that company to give him the proper figures. He testified that he used the interest figure given to him by Heller. In this approach, Sammons actually followed, though unknowingly, a suggestion given in *Holland* v. *Doan, supra,* where we stated that if the appellee did not know how to figure interest, "he should have had his calculations checked by one who was familiar with figuring interest."

Another important circumstance to be considered is the fact that the interest rate on the third contract between the parties, which was figured on the basis of 36 months, was entirely legal.

Charles Mott, Jr., a Certified Public Accountant of Little Rock, testified on behalf of appellees that Contract No. 2 (February, 1964) was usurious, though it is interesting to note that he reached an overcharge figure of $67.81, which he stated he only arrived at after quite some length of time, "I would judge that it would take the biggest part of a day to compute it." The witness stated that his computation was not exactly correct, because it was figured on a calendar year of 364 days instead of 365. Mott also said that he was familiar with the book, "Lake's Monthly Installment and Interest Ta-

bles;" that it was widely used, and that he would accept it as conveying valid information. Apparently, the interest under the terms of this particular transaction was difficult to reach, since, as already stated, in stipulating the amount of the overcharge, no definite figure was used, but rather, "approximately $57.00 to $60.00."

Finally, though our determination is not based on that premise, it seems rather ridiculous that any concern would risk cancellation of a principal debt of nearly $16,000.00 (not counting interest), in order to receive "approximately $57.00 to $60.00" excess interest.

Summarizing, we think the circumstances show an honest, unintentional mistake, because of the following evidence:

1. The first contract prepared did not charge any excess interest.

2. The second contract, involved here, executed entirely for the benefit of appellees, was new to appellant, and it relied upon its finance company for the proper interest figure, this company apparently using a recognized interest table.

3. The third contract entered into between the parties did not charge any excess interest.

4. A recognized public accountant, testifying on behalf of appellees, admitted that the figure was difficult to reach, and even his own calculations were slightly in error.

5. Evidently the exact figure has never been reached, since the parties stipulated that the excess interest amounted to "approximately $57.00 to $60.00."

In accordance with what has been said, that portion of the decree holding the February, 1964, contract (by this court designated as Contract No. 2) usurious is re-

versed, and the cause is remanded to the Ashley County Chancery Court, with directions to enter a decree not inconsistent with this opinion.