# FORD MOTOR CREDIT COMPANY v.
## Donald E. HUTCHERSON

82-32                                      640 S.W.2d 96

Supreme Court of Arkansas
Opinion delivered October 4, 1982
[Rehearing denied November 8, 1982.*]

*PURTLE and HAYS, JJ., would grant rehearing.

*Smith & Nixon,* by: *W. R. Nixon, Jr.,* for appellant and cross-appellee.

*Rubens & Rubens,* by: *Kent J. Rubens,* for appellee and cross-appellant.

ROBERT H. DUDLEY, Justice. Donald E. Hutcherson, appellee, purchased a Lincoln Mark V automobile from Union Lincoln Mercury of Little Rock. The parties executed a level payment installment sales contract that provided for the financing of $12,700 at 10% per annum, payable in 48 equal monthly installments of $322.09, with the total finance charge stated as $2,760.32. The figures for the amounts of the monthly installments and of the finance charge were taken from ordinary interest tables supplied by Ford Motor Credit Company, the appellant, to whom Union Lincoln Mercury subsequently assigned the contract.

The contract was executed on July 17, 1978, and the first payment was due August 10, 1978, a period of only 24 days, or 6 days less than an ordinary interest month or 7 days less

than an exact day interest month. See Thorndike Encyclopedia of Banking and Financial Tables (1980) p. XVI. Each of the succeeding consecutive monthly installments was due on the tenth day so that Hutcherson never would be afforded a full 48 months of 30 days each under the ordinary interest tables, nor would he be afforded four full years of exact day interest. Thus, the contract charged Hutcherson 10% interest for 4 years, or 48 months, while giving him use of that money for only 3.95 years or 47 months and 24 days.

Hutcherson tendered the first payment under protest claiming that the contract was usurious. Ford Credit recomputed the finance charge using exact day interest, or a 365-day year, and tendered Hutcherson a check to cover the excess finance charge but he refused it. He made two more payments under protest and then stopped paying altogether.

Ford Credit filed suit to replvy the automobile for nonpayment of the debt to which Hutcherson pleaded usury. The Chancellor found the contract was usurious. We affirm. In addition, the Chancellor held that Hutcherson was not entitled to a refund of the money he paid under protest. Hutcherson cross-appeals and we also affirm on that issue. Jurisdiction is vested in this Court by Rule 29 (4).

The Arkansas Constitution provides that all contracts for a greater rate of interest than 10% per annum shall be void as to principal and interest. Art. 19, § 13. In *Martin's Mobile Homes* v. *Moore,* 269 Ark. 375, 601 S.W.2d 838 (1980), the only Arkansas case discussing modes of computation of interest, we set out the four main possibilities for computing simple interest as discussed in the Thorndike Encyclopedia of Banking and Financial Tables (rev. ed. 1980) p. VII. Each method may give a different amount of interest, and yet, each would be correct for that particular mode.

Exact day interest is the method which counts each day in the interest period. The basis year to compute interest is 365 or 366 days. We have always approved this method as a non-usurious method of calculating interest when the interest rate is 10% or less. According to the testimony in this case, 10% interest using this method amounts to $2,734.42.

Since the contract called for $2,760.30 in interest it was usurious according to this mode of computation.

Ordinary interest counts months and days in the interest period. The basis year is always 360 days and a month is always 30 days. We approved the 360-day rule of computing ordinary interest when the interest rate is 10% or less to allow a practical solution to the virtual impossibility of preparing a standard form of contract that would yield 10% interest per annum on an exact day basis when monthly payments are being made. Ordinary interest allows the striking of a reasonable average as a practical means of reconciling erratic values. It contains no intent to avoid our usury law. We pointed out in *Martin* that there was nothing insidious about ordinary interest because annual payments of 10% interest upon a $1,000 debt are $100, the same as exact day interest. The only difference arises when interest payments are to be made monthly, quarterly, or semi-annually and we held that months of a standard length can be used because of history and reason.

According to Lake's Monthly Installment and Interest Tables (6th ed. 1970), an authoritative work we have relied on in many cases, a charge in excess of 10% ordinary interest was made in this case. According to Lake's tables the interest on $12,700 for 24 days was $85.67. In accordance with Ark. Stat. Ann. § 68-606 (Repl. 1979) the payment is first applied to interest and the balance to principal. Thus $84.67 of the first $322.09 payment is applied to interest and the remaining $237.42 applied to principal leaving $12,462.58 to be financed over 47 months. The maximum monthly payments at 10% ordinary interest were $321.96 and thus the monthly payments contracted for were greater than 10% ordinary interest. This contract was based on ordinary interest and is usurious by its own terms and it is for that reason we affirm.

Ford Credit's attorneys in an excellent brief contend that the contract does not exceed 10% banker's interest. That contention is correct. Banker's interest has a basis year of 360 days but interest is charged on the exact number of calendar days in the interest period. Thorndike, *supra*, p. XXV and Thorndike Yearbook (1981) p. 45. Thus in any period the

interest computed equals 365/360 more than the stated annual interest rate, which would amount to 10.14% annual interest on the three 365 day years involved and 10.16% annual interest on the 366 day year involved. However, the contract at issue was not based on banker's interest; instead it was based on Ford Credit's ordinary interest tables. Therefore we do not find it necessary to decide whether a contract which calls for 10% to be computed by the banker's interest method is usurious. *See generally:* Comment, *Usury: Issues in Calculation,* 34 Ark.L.J. 442 (1980).

Appellant Ford Credit next contends that there was no intent to charge excessive interest because Union Lincoln Mercury's employees had no idea that a change in the first payment date would affect the finance charge. The fact that a clerk did not understand an interest formula does not mean that Ford Credit does not understand the formula.

We have held that the intent required is the intent to charge a certain amount and that if the amount exceeds 10%, there was an intent to charge a usurious rate of interest. *Superior Improvement Co.* v. *Mastic Corp.,* 270 Ark. 471, 604 S.W.2d 950 (1980). In cases involving manual pre-calculated interest tables we have stated that an honest error of fact in calculation is not sufficient intent to render a contract usurious. In *Sammonds-Pennington Co.* v. *Norton,* 241 Ark. 341, 408 S.W.2d 487 (1966) the creditor looked to an expert for advice on the computation of interest. The expert used "Lake's Monthly Installment and Interest Tables" but the interest was usurious. We held this to be a mistake of fact as there was no intent on the part of the creditor to charge any amount other than that he was told amounted to 10%. A similar mistake of fact occurred when the chart prepared by Financial Publishing Company of Boston, Massachusetts was in error. *Davidson* v. *Commercial Credit Equipment Corp.,* 255 Ark. 127, 499 S.W.2d 68 (1973). However in cases such as the one before us, we have held that the creditor made a mistake of law in misapplying a formula. For example, in *Holland* v. *Doan,* 228 Ark. 340, 307 S.W.2d 538 (1957), the car dealer used a chart furnished by General Motors Acceptance Corporation and apparently charged interest on the basis of one year, or 52 weeks, when

the payments were to be made over only 48 weeks. We held the mistake was one of law in applying the wrong formula because the creditor intended to receive a rate of interest that proved to be usurious. The case now before us is the same. The Chancellor held that in charging 10% interest for a 4-year period while the money was actually loaned for only 3.95 years the appellant intended to receive an amount of interest which proved to be usurious and this, in turn, constitutes intent to charge a usurious rate. We cannot state that the holding of the Chancellor was clearly in error.

Ford Credit next argues that the trial court erred in refusing to estop Hutcherson from asserting the defense of usury.

For eight years Hutcherson, a college graduate, had served as an assistant bank examiner. Only two months before he purchased the car he had attended a seminar on the subject of checking the accuracy of annual percentage rates on consumer loans. He was aware of the Arkansas usury law. A clerk for Union Lincoln Mercury testified that on July 17, she first prepared a non-usurious contract which was never executed. In it, she had a first payment period of 45 days. She then prepared a second contract, the one before us, at the direction of the Union Lincoln Mercury salesman. She did not know the reason for the change. The salesman had a stroke before the trial and was unable to testify. Hutcherson testified that he knew of only one contract. He testified that he did not see the automobile until July 16 and he purchased it on July 17, and signed the only contract he saw on that date. He said he wanted the contract to be payable on the 10th, but he had nothing to do with the interest rate or computing the amounts of the payments. Those items were computed by Union Lincoln Mercury's title clerk who never talked to Hutcherson.

A debtor may be estopped from asserting the defense of usury when the debtor created the infirmity in the contract in order to take advantage of the creditor. *Blanks* v. *American Southern Trust Co.*, 177 Ark. 832, 9 S.W.2d 310 (1928).

However, here the trial court did not find that estoppel should be applied. While the circumstances here are suspicious, we must consider the evidence in the light most favorable to the appellee and affirm unless the trial court's decision is clearly erroneous. ARCP Rule 52. We cannot say the Chancellor was clearly in error.

We find no merit in Ford Credit's final point that the trial court erred in refusing to reform the contract. Usurious written instruments are subject to reformation where there is mutual mistake, or where there has been a mistake on the part of the lender and fraud or other inequitable conduct on the part of the borrower. *Turney* v. *Roberts,* 255 Ark. 503, 501 S.W.2d 601 (1973). There was no mutual mistake in this case and the Chancellor did not find fraud or inequitable conduct on the part of Hutcherson and we cannot state that he was clearly in error. We affirm on this issue.

In his cross-appeal, appellee contends that the court erred in allowing Ford Credit to keep the three payments he made under protest. The Chancellor was correct. There are no statutes on the subject. *See* Ark. Stat. Ann. Title 68, Chapter 6 (Repl. 1979 and Supp. 1981). The common law rule which we adopted is that only excessive interest is recoverable while principal and lawful interest are not. The reasons are brilliantly set out by Justice Hemingway in *Josey* v. *Davis,* 55 Ark. 318, 18 S.W. 185 (1892). There is no showing in this case that any of the money actually paid went to excessive interest. Therefore cross-appellant Hutcherson has not shown he is entitled to a refund.

Affirmed on both appeal and cross-appeal.

HICKMAN, PURTLE and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. I am unwilling to join in declaring this loan usurious. Like the trial court, the majority concentrates on mathematical considerations and methods of computing interest, ignoring other important aspects of the case: a) the opinion notes that Ford initially prepared the note with the first monthly installment due 45 days after the sale, admittedly not usurious, but fails to

mention that the date was fixed *at the request of the borrower,* thereby becoming usurious by 6 days; b) the overcharge in this case was the result of an unintentional mistake in a single, isolated transaction induced by the borrower; c) the motivation of the lender was not to obtain a greater return of interest but simply to accommodate a borrower; d) the overcharge was in a miniscule amount — approximately $20.00 on an indebtedness of $12,700, which the lender tried to refund when the mistake was pointed out.

We have said that a timely offer to remit by the lender is a significant fact. *Holland* v. *Doan,* 228 Ark. 340, 307 S.W.2d 538 (1957). And we have often ruled a contract may be over ten percent without being usurious. *First American National Bank* v. *McClure Constr. Co.,* 265 Ark. 792, 581 S.W.2d 550 (1979); *Davidson* v. *Commercial Credit Equipment Corp.,* 255 Ark. 127, 499 S.W.2d 68 (1973); *Sammons-Pennington Co.* v. *Norton,* 241 Ark. 341, 408 S.W.2d 487 (1966). Exceeding the limit, with nothing more, is not enough to transform a contract into a usurious instrument. As we stated in *Winkle* v. *Grand National Bank,* 267 Ark. 123, 601 S.W.2d 559 (1980):

> When usury is alleged, the test is whether the borrower promised to pay a greater rate of interest than the law permits and the lender knowingly entered into a usurious contract intending to profit by the methods employed.

and in *Davidson, supra:*

> A lender who makes an excessive charge through a mistake or ignorance of the fact it was excessive has no intent to unlawfully charge interest.

The critical factor in determining whether a contract is usurious is *not* the mathematical result alone, but whether, after looking at *all* the circumstances, it can be said there was intent:

> It appears that, in determining whether a usurious charge has been made, all attendant circumstances

must be taken into consideration. When this is done, we think it is plain that the overcharge in the instant litigation was the result of an error, made in good faith, rather than being based on an intent to violate the usury law.
*Sammons-Pennington, supra.*

Yet neither the trial court nor the majority give any consideration to these factors. The plain import of the majority opinion is that all a lender has to do is to intend to charge a certain rate and if that rate is in excess of 10%, the intent to charge usuriously is present. The majority opinion relies wholly on the assertion that Ford made a mistake of law in misapplying a formula, and that is enough to constitute intent. The case the majority points to as exemplifying this reasoning is *Holland* v. *Doan*, 228 Ark. 340, 307 S.W.2d 538 (1957). I disagree with their interpretation of that case. In *Holland*, a used car dealer had charged interest on a basis of one year (52 weeks) instead of 48 weeks as provided in the contract. The first point the court in *Holland* makes is that there were other cases where usurious charges had been exacted by mistake, but the lender offered to credit the borrower's account: "Here, no offer was made until after both sides had rested, and the case had been reopened . . . though the contribution was very clearly brought to his attention, no offer of remittance was made, nor defense interposed that said charges were the result of unintentional error. This to us is a most significant fact in the litigation." *Holland* at 342. I do not read that decision as saying the lender made a mistake of law, and the court goes on to say:

> One of two conclusions must be reached; either appellee did not know how to figure the interest, or else he carelessly figured same. In neither instance could the excessive charge be legally justified or excused. If the former were true, he should have had his calculations checked by one who was familiar with figuring interest, If the latter, appellee should have been even more careful in this instance, for *he was dealing with a man who could neither read nor write. Holland* at pg. 345. (my emphasis).

The differences between the case before us and *Holland* are striking and to say that *Holland* turned solely on the point of misapplying a formula is fallacious. In any event, if misapplying the formula or using the wrong formula is the problem, how do we reconcile *First American, supra,* where an experienced financing institution used the wrong formula but we still held the contract not to be usurious? I emphasize the point from *Sammons-Pennington, supra,* that *all attendant circumstances* must be considered.

The majority opinion does mention that there are exceptions to the rule and notes two of them: honest error of fact in calculation and interest attempted by a person not skilled in computation of interest who looked to an expert for advice. The second exception was drawn from *Sammons-Pennington, supra,* but in that case the person who drew up the contract was not inexperienced in computing interest, as the majority states. To the contrary, he was the president of the company and evidently experienced in computing interest. He had drawn up the terms for other loans within that case without any problem. His only area of inexperience was in preparing documents for a loan for a longer duration than he was accustomed to. The expert's advice he relied on was the finance company which eventually bought Sammons-Pennington's paper. I find that situation to be analogous to Ford's position. And in *First American, supra,* an error was made by an experienced lending institution, yet the contract was not found to be usurious. I am hard pressed to find the exceptions to be as narrow and limiting as the majority opinion suggests.

Considering all the attendant circumstances of this case in light of what we have found in the past not to be usurious, I cannot find Ford to have the requisite intent to charge a usurious rate. Ford had originally drawn up a contract with the first payment due at 45 days, which would not have been usurious. It was the borrower who proposed the earlier due date — which resulted in the usurious excess. As the majority notes, the borrower here was an experienced bank examiner especially knowledgeable in interest computation and trained in the detection of usury. Contrast this to the consumer in *Holland,* who could neither read nor write.

Too, when Ford discovered the possible excess it immediately attempted to remit it to the borrower, who just as quickly refused it. A similar tender was conspicuously absent in *Holland*. True, Ford is an experienced lender, but what of the allowances made in *First American* and *Sammons-Pennington*? Even experts are allowed some tolerance for honest mistakes. I fail to see enough evidence to constitute intent and I see the exceptions as broad enough to easily encompass this situation.

Ford had not been preparing its contracts in this fashion regularly. Where intent is lacking and it is clear that no systematic pattern is being practiced to circumvent our usury laws, I believe it is wrong to impose the highly punitive result that enables a borrower to drive away in a $12,700 automobile when the only reason the contract was usurious is because he asked that the due date of the first installment be changed. Whether his motive was innocent or ulterior, the trial court did not address. That issue was especially relevant here. But even assuming good faith, it was still done purely at the borrower's behest and he ought to be estopped from claiming the harsh remedy our law affords.

Judges HICKMAN and PURTLE join in this dissent.