VAN CARR ENTERPRISES, INC., Zhang Corporation, Van Carr and Helen Carr *v.* HAMCO, INC. and Moore Properties, Inc.

05-954                                              232 S.W.3d 427

Supreme Court of Arkansas
Opinion delivered March 16, 2006

---

*Peel Law Firm, P.A.*, by: *Richard L. Peel* and *Jennifer L. Moder-sohn*, for appellants.

*Joel Taylor, P.A.*, by: *Joel Taylor*, for appellees.

ANNABELLE CLINTON IMBER, Justice. Appellants Van Carr Enterprises, Inc. ("Van Carr Enterprises"), Zhang Corporation, Van Carr and Helen Carr, appeal the circuit court's judgment and decree of specific performance ordering Van Carr Enterprises to sell real estate to Appellees Hamco, Inc. ("Hamco"), and Moore Properties, Inc. ("Moore Properties"). The facts underlying the appeal are as follows.

On June 24, 2002, Van Carr Enterprises and Hamco entered into a commercial lease agreement with an option to purchase the "Carr Building" located in Russellville, Arkansas. The contract provided that it was a "fixed period lease with an option to purchase the Property" with the term of lease to begin on August 1, 2002, and end on August 1, 2004. The contract further provided that Hamco and Moore Properties had the right and option to purchase the property for the price of $412,000, which option could be exercised at any time during the 24-month period by giving written notice to Van Carr Enterprises. If Hamco and Moore Properties elected to exercise the option to purchase, Van Carr Enterprises would finance the purchase over twenty years at an interest rate of 7% for sixty months and thereafter at 6% above the Federal Discount Rate (FDR). On the date of the agreement, June 24, 2002, the FDR was 1.25%.[1]

On May 15, 2003, Van Carr Enterprises entered into a lease for a suite in the Carr Building with Appellant Zhang Corporation, an entity owned by Appellant Van Carr (who is also the owner of Van Carr Enterprises) and his wife Helen. The lease provided for a ten-year term at $400 per month, with an option to renew the lease for another ten years at $500 per month. On March 1, 2004, a second lease for an additional suite on similar terms was entered into between Van Carr Enterprises and the Zhang Corporation.

In April 2004, Tony Moore, a shareholder in Hamco and Moore Properties, gave written notice to Van Carr Enterprises that Appellees intended to exercise the option to purchase. Subsequently, in July 2004, Appellants mailed a notice to Appellees,

---

[1] Effective January 9, 2003, the FDR was eliminated and the Federal Reserve Board's "primary credit rate" became effective. *See* Op.Atty. Gen. # 2002-334 (citing 12 CFR § 201 (2003)).

informing them that the lease and option to purchase would expire on August 1, 2004, and offering either (1) for Appellees to purchase the building and allow the current leases to remain or (2) to sign a new lease for five more years at a monthly rate of $3,200 and a new option to purchase for the price of $450,000 at an interest rate of 8%.

On July 23, 2004, Appellees filed a complaint against Appellants alleging breach of contract and requesting specific performance. Appellees also requested equitable compensation for the difference between fair-market-value rental rates and the rental rates in the Zhang Corporation leases. Appellants responded, arguing that the contract contained an illegal and unlawful rate of interest and was illegal on its face. On March 11, 2005, a hearing was held, and on May 16, 2005, the circuit court ruled that the contract did contain a usurious rate of interest but that the entire contract was not void. The court awarded specific performance of the contract, but declared that all interest called for in the contract was void. Additionally, the court declined to award equitable compensation and attorney's fees. Notices of appeal and cross-appeal were filed by Appellants and Appellees respectively. We assumed jurisdiction over the instant matter as a case of first impression pursuant to Ark. Sup. Ct. R. 1-2(b)(1) (2005).

## I. Enforcement of the contract

Appellants' first argument is that the circuit court erred in enforcing the contract because it contained an illegal rate of interest. In support of their argument, Appellants rely on numerous cases where Arkansas courts have prohibited the enforcement of illegal contracts, but the cited cases are inapposite. The contractual infirmity at issue in those cases was not, as it is here, a usurious rate of interest. Article 19, § 13 of the Arkansas Constitution deals with the maximum lawful rates of interest. It states in part:

(a) General Loans:

(i) The maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract.

(ii) All such contracts having a rate of interest in excess of the maximum lawful rate shall be void as to the unpaid interest. A

person who has paid interest in excess of the maximum lawful rate may recover, within the time provided by law, twice the amount of interest paid. It is unlawful for any person to knowingly charge a rate of interest in excess of the maximum lawful rate in effect at the time of the contract, and any person who does so shall be subject to such punishment as may be provided by law.

Ark. Const. art. 19, § 13.

The contract at issue in this case provided for an interest rate of 7% for the first sixty months of the contract. Based upon the 1.25% FDR at the time of the contract, the maximum lawful rate of interest would have been 6.25%, thereby making the rate of 7% usurious. Additionally, the interest rate of 6% above the FDR for the next fifteen years of the contract would also be unlawful. The question, then, is whether the remaining provisions of a contract with a usurious interest rate can be enforced. Notably, the constitution provides that contracts having a usurious rate of interest shall be void *as to the unpaid interest*; but, the constitution does not provide that the entire contract shall be void. Although former law voided an entire contract if it exceeded the maximum rate of lawful interest, "the express intent of Amendment 60 is that the taint of usury voids the agreement only to the extent of unpaid interest." *Perryman v. Hackler*, 323 Ark. 500, 916 S.W.2d 105 (1996) (citing *Henslee v. Madison Guar. Sav. and Loan Ass'n*, 297 Ark. 183, 760 S.W.2d 842 (1988)). Consequently, in the instant case, the contract between Appellants and Appellees was only void as to the usurious rate of interest, and the circuit court did not err in ordering specific performance of the remaining provisions of the contract.

Appellants next argue that Appellees should be estopped from asserting that the interest rate was usurious. A debtor may be estopped from asserting the defense of usury when the debtor created the infirmity in the contract in order to take advantage of the creditor. *Ford Motor Credit Co. v. Hutcherson*, 277 Ark. 102, 640 S.W.2d 96 (1982). In *Ford Motor Credit*, Ford Motor argued that Hutcherson should be estopped from asserting a defense of usury. Our court recited the following facts:

For eight years, Hutcherson, a college graduate, had served as an assistant bank examiner. Only two months before he purchased the car he had attended a seminar on the subject of checking the

accuracy of the annual percentage rates on consumer loans. He was aware of the Arkansas usury laws. A clerk for Union Lincoln Mercury testified that on July 17, she first prepared a non-usurious contract which was never executed. In it, she had a first payment period of 45 days. She then prepared a second contract, the one before us, at the direction of the Union Lincoln Mercury salesman. She did not know the reason for the change. The salesman had a stroke before the trial and was unable to testify. Hutcherson testified that he knew of only one contract. He testified that he did not see the automobile until July 16 and he purchased it on July 17, and signed the only contract he saw on that date. He said he wanted the contract to be payable on the 10th, but he had nothing to do with the interest rate or computing the amounts of the payments. Those items were computed by Union Lincoln Mercury's title clerk who never talked to Hutcherson.

*Id.* at 107, 640 S.W.2d at 99. The court then held,

However, here the trial court did not find that estoppel should be applied. While the circumstances here are suspicious, we must consider the evidence in the light most favorable to the appellee and affirm unless the trial court's decision is clearly erroneous. We cannot say the Chancellor was clearly in error.

*Id.* at 108, 640 S.W.2d at 99.

In this case, Appellants assert that Mr. Moore, Appellees' principal, drafted the contract and knew or should have known the maximum lawful rate of interest. Appellants also maintain that they questioned Mr. Moore about the interest rate and were advised that the rate was not usurious. However, Appellees state that Mr. Moore merely transcribed the agreement, according to the terms agreed upon by both parties. Furthermore, Mr. Moore testified that he and Carr did not have any discussions about the Arkansas usury rate during their negotiations, and that he did not know if the contract was usurious. We have long held that the determination of the credibility of witnesses is best left to the trial court before whom they are testifying. *Nat'l Lumber Co. v. Advance Dev. Corp.*, 293 Ark. 1, 732 S.W.2d 840 (1987). As in *Ford Motor Credit v. Hutcherson, supra,* the circuit court's decision not to apply estoppel to these facts is not clearly erroneous.

In a similar vein, Appellants suggest that the Appellees waived the issue of usury by seeking specific performance of the contract. In support of this proposition, Appellants cite the cases of

*Utterberg v. Cameron,* 282 N.W.2d 536 (Minn. 1979), *Hall v. Montaleone,* 348 N.E.2d 196 (Ill. App. Ct. 1976), and *Sosin v. Richardson,* 26 Cal. Rptr. 610 (Cal. Dist. Ct. App. 1962), arguing "other states that have been faced with such cases have held that a buyer seeking specific performance of a usurious contract waives the usurious term." However, in each of these cases, the party attempting to assert a usury defense was the *lender* and not the borrower, and the issue before the appellate court was whether the defense of usury was available to a lender/creditor. In each case, the appellate court concluded that it was not. In fact, only one of the three cases even discusses the possibility of waiver by the *borrower.* The Illinois Court of Appeals stated:

> The defense of usury in this case is founded on the contention that the contract, since it provided a usurious rate of interest is illegal and void and cannot be sued upon. However, it is clear from the authorities cited above that even as to the borrower, for whose benefit the statute was enacted, a usurious contract is not void but only voidable. Moreover, the borrower cannot use the statute to take advantage of his own wrong. If the borrower, for whose benefit the statute was enacted, cannot use it to take advantage of his own wrong, it is hardly logical to allow the lender against whom the statute is aimed, to do so.

> In our opinion the usury statute does not render a usurious contract void and the borrower may enforce the contract, *waiving the question of usury.* It would seem to be a necessary consequence of this holding that as a practical matter the defense of usury is never available to the lender since it would only be raised by the lender where the borrower affirmed the contract and in that case the point is waived.

*Hall v. Montaleone,* 38 Ill.App.3d at 593, 348 N.E.2d at 198-99 (emphasis added). Our statute, however, differs markedly from the Illinois statute, which provides, "In all written contracts it shall be lawful for the parties to stipulate or agree that 8% per annum, or any less sum of interest, shall be taken and paid upon every $100 of money loaned or in any manner due and owing from any person to any other person [. . .] in this state." *Id.* at 592, 348 N.E.2d at 197 (citing Ill.Rev.Stat. 1971, ch. 74, par.4). Specifically, the Illinois statute does not provide that the contracts are only void as to the unpaid interest. Thus, though in Illinois a usurious contract is only voidable, in

Arkansas, the contract is void as to unpaid interest. This distinction mandates the conclusion that under Arkansas law a borrower cannot waive a usury defense by simply requesting specific performance of the remaining clauses of the contract.

## II. Cancellation of the leases

Appellants' next argument is that the circuit court erred in cancelling the leases from Van Carr Enterprises to Zhang Corporation because no fraud was shown. The circuit court actually ruled as follows:

> The court disagrees with [Appellants'] argument that paragraph nine of the proposed decree should be amended to state that the Warranty Deed is 'subject to all outstanding leases.' The remedy of specific performance requires that the defendants deliver merchantible [sic] title to the plaintiffs and the court directs them to do so. The remedy of specific performance would void these leases because any and all interest the defendants have created in themselves were improper.

The option to purchase agreement stated, "Unless otherwise specified, conveyance of the Property shall be made to Buyer by general warranty deed, in fee simple absolute, except it shall be subject to recorded instruments and easements if any, which do not materially affect the value of the Property." Thus, to comply with the specific-performance order, Appellants were required to convey a clear title to Appellees. Regarding the leases, the circuit court found that the leases were "for a term of ten years at a shockingly low rental rate with option to renew for an additional ten years at a monthly increase of only $100.00 per month." The "unreasonably low rental and terms of the lease," as found by the circuit court support a conclusion that the value of the property would materially be affected by the lease agreements between Van Carr Enterprises and Zhang Corporation. Accordingly, we hold that the circuit court did not err in finding that the Warranty Deed was not subject to the outstanding leases.

## III. Cross Appeal

Appellees' first argument on cross-appeal is that the circuit court improperly limited the testimony of their expert, Paula Bragg. Ms. Bragg was a local property manager for several years and was called to testify as an expert regarding the issues of rental

rates and terms. At the hearing, the circuit court refused to allow Ms. Bragg to testify that she believed that the rental rate between Van Carr Enterprises and another tenant was "the fair rental rate at that time" because she had not revealed a similar opinion in her deposition. Appellees argue this determination was in error because Ms. Bragg testified in her deposition that the rental rates totaled $2,005 per month and that the rates had remained steady for several years. Appellees argue that, by implication, it was her opinion that $2,005 per month was a reasonable rate.

In view of our holding that the circuit court did not err in cancelling the leases between Van Carr Enterprises and Zhang Corporation, we need not address this evidentiary point. Appellees sought to have Ms. Bragg testify about fair rental rates in connection with their equitable compensation claim for the difference between fair–market–value rental rates and the rental rates in the Zhang Corporation leases. Because Appellees are no longer bound by the Zhang Corporation leases, including the low rental rates, their claim for equitable compensation is rendered moot. In other words, the property may now be rented at whatever rate Appellees deem fair and reasonable.

Appellees' second point on cross–appeal is that the circuit court erred in refusing to award attorney's fees. In their motion, Appellees argued they were entitled to attorney's fees pursuant to Ark. Code Ann. § 16-22-308 which provides:

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

Ark. Code Ann. § 16-22-308 (Repl. 1999). The award of attorney's fees is discretionary under the statute. *Caplener v. Bluebonnet Mill. Co.*, 322 Ark. 751, 911 S.W.2d 586 (1995).

In this case, the circuit court denied attorney's fees because Appellees had not provided copies of itemized billing statements to Appellants. Appellees argue that the billing statements contained privileged material and that copies of the statements were provided to the court for an *in camera* review. Appel-

lees, however, fail to indicate why they could not redact any privileged material and furnish the redacted itemized bills to Appellants. Thus, we hold it was not an abuse of discretion for the circuit court to deny an award of attorney's fees.

Affirmed.