Cite as 2019 Ark. App. 566

# ARKANSAS COURT OF APPEALS
DIVISIONS I, II & III
No. CV-18-939

| | |
|---|---|
| JESSICA MCCABE AND AMY PURDY | **Opinion Delivered** December 4, 2019 |
| APPELLANTS | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-18-421] |
| V. | |
| WAL-MART ASSOCIATES, INC. | HONORABLE JOHN R. SCOTT, JUDGE |
| APPELLEE | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**BRANDON J. HARRISON, Judge**

The first issue is whether Jessica McCabe and Amy Purdy can bridge the moat that is the at-will employment doctrine and go forward on their complaint against Wal–Mart Associates, Inc. McCabe and Purdy sued their former employer under two legal theories while alleging that their employment was terminated for an improper reason—meaning they were wrongfully discharged. The Benton County Circuit Court dismissed the complaint against Walmart under Arkansas Rule of Civil Procedure 12(b)(6) (2019). The court accepted the company's argument that McCabe and Purdy had failed to state viable claims for relief given the specific allegations and the contours of the at-will employment doctrine.

The dismissal segues to the second point on appeal. After the dismissal, on Walmart's motion and in the face of the plaintiffs' written opposition, the circuit court ordered McCabe and Purdy to pay Walmart a $13,685 attorney fee.

On de novo review, we affirm the dismissal of the entire complaint with prejudice.[1] But we reverse and remand on the fee issue because the court abused its discretion by awarding a substantial fee given the record and the law.

Next, the details.

## I. *McCabe and Purdy's Complaint*

### A. Walmart's Policies[2]

McCabe and Purdy alleged in the circuit court that they had an employment contract with Walmart whose terms were stated in the company's employment policies. They also alleged, among other things, that Walmart violated its open-door policy when it terminated

---

[1]*Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002) (conducting a de novo review when determining whether the circuit court erred by granting a Rule 12(b)(6) motion on a question of law). There seems to be a conflict in the caselaw regarding the standard of review to be applied when reviewing the dismissal of a complaint pursuant to Arkansas Rule of Civil Procedure 12(b)(6). Both "abuse of discretion" and "de novo" appear in the cases. *Compare Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, 372 S.W.3d 324 (abuse of discretion) *with Faulkner, supra* (de novo). Because we would reach the same result under either standard in this case, and no party has asked that we address the seeming contradiction, we have not done so.

[2]Walmart says that McCabe and Purdy's failure to attach the policies to their complaint bars them from using them on appeal. That is a curious position given the company did not move to strike the documents from the record while in the circuit court; it even placed some of the papers into the record itself by attaching them to its motion to dismiss. Specifically, the *Open Door Communications Policy*, *Walmart Information Policy*, and *Coaching for Improvement* were attached as exhibits to the company's own motion. McCabe and Purdy placed the *Global Statement of Ethics* into the record below during the post-dismissal phase by attaching it to their "Reply on motion for new trial/alt. motion for findings of fact and conclusions of law together with incorporated briefing." Walmart did not object to that event. Although the complaint did not refer to the *Global Statement of Ethics*, all the policies discussed in this opinion were placed into the record by one or more of the parties and were never struck from it by the circuit court.

2

their employment and thereby breached the company's promise to refrain from retaliating against an employee who used the policy.

Pursuant to Arkansas Rule of Civil Procedure 10(c), Walmart attached copies of the policies at issue to its motion to dismiss. Each policy contains this language:

> This information does not create an express or implied contract of employment or any other contractual commitment. Walmart may modify this information at its sole discretion without notice, at any time, consistent with applicable law. Employment with Walmart is on an at-will basis, which means that either Walmart or the associate is free to terminate the employment relationship at any time for any or no reason, consistent with applicable law.

Walmart's written open-door policy—which also contains the language just quoted—encourages employees to report "ideas, suggestions, and concerns" to anyone in the company. The open-door policy also states:

> Retaliation for initiating an open door communication or cooperating in a review relating to any open door communication, is strictly prohibited. Any associate who retaliates against another associate for initiating or cooperating in an open door review will be subject to disciplinary action, up to and including termination.

There is more. Walmart's *Global Statement of Ethics* contains a statement to "Speak up for good" and encourages employees to "[u]se the Open Door Communications process." "It's important for each of us to create a work environment where everyone can raise concerns of ethics issues without fear of retaliation." Walmart also states the following in its *Global Statement of Ethics*:

> Walmart will not terminate, demote or otherwise discriminate against associates for raising concerns. Also, it is important for co-workers not to isolate associates who have raised concerns—such associates should be treated with respect. Any change in treatment toward an associate who has raised a concern could be seen as a form of retaliation.

3

And the *Global Statement* contains this at-will language:

> This Statement of Ethics provides an introduction to the responsibilities of all associates, along with an overview of certain important policies. It's an important part of your employment with Walmart; however, it's not intended to create an express or implied contract of employment in and of itself. It is also not inclusive of all applicable company policies. . . . Employment with Walmart is on an at-will basis—where permitted by law—meaning associates are free to resign at any time for any or no reason. Violations of this Statement of Ethics may result in disciplinary action up to and including termination.

With these policies in mind, we turn to McCabe and Purdy's complaint, whose allegations are presumed true at the Rule 12(b)(6) stage. *Ark. Dep't of Envtl. Quality v. Brighton Corp.*, 352 Ark. 396, 102 S.W.3d 458 (2003).

## B. Jessica McCabe's Case

Having viewed the facts alleged in her complaint as true, we nonetheless hold that McCabe's two claims, one for promissory estoppel (detrimental reliance) and one for breach of contract, fail as a matter of law.

McCabe worked as a discovery specialist at Walmart's home office in Bentonville, Arkansas, and therefore had access to company records. Her boyfriend was terminated from Walmart and wanted to know what his disciplinary records contained. McCabe accessed the records and read them to her boyfriend because he "desired to utilize the open-door policy to raise a complaint about the cause and manner of his termination." McCabe alleged that no policy restricted her use of the disciplinary records for this purpose. At some point an "anonymous tipster" reported her conduct as an ethics violation, and her employment was terminated. McCabe said that Walmart fired her "for reading the disciplinary records to her boyfriend" but failed to comply with its own policies when it terminated her employment.

4

These facts do not state a claim for wrongful discharge that can skirt the at-will doctrine under current law. As we will develop further below, generally speaking, an employer or an employee may terminate an employment relationship at will. *Kimble v. Pulaski Cty. Special Sch. Dist.*, 53 Ark. App. 234, 921 S.W.2d 611 (1996). An employer may discharge an at-will employee for good cause, no cause, or even a morally wrong reason. *Id.* Here, McCabe's at-will employment status was stated in pertinent Walmart documents. More to the point given the specifics of the complaint, McCabe's allegation that Walmart violated its open-door policy related to her boyfriend, not her. McCabe did not allege that she herself engaged in some open-door communication and was retaliated against by Walmart for doing so. Given the record before us, McCabe had no actionable contractual right or reliance interest that insulated her from being terminated "for reading the disciplinary records to her boyfriend." We therefore have no hesitation affirming the circuit court's dismissal of McCabe's claims with prejudice given the pleaded allegations, even if they are true. We acknowledge her grievance against Walmart, but she did not state a viable claim against it.

### C. Amy Purdy's Case

The remaining plaintiff presents a closer call. Taking her allegations as true, which we must do at this point, Purdy plainly used Walmart's open-door process to report that a married salaried associate was having an affair with an unwed hourly associate. Purdy alleged that the relationship violated Walmart's policies because the two colleagues were on the same team, and their "constant flirtations" interfered with her (Purdy's) work. The open-

door communication about the affair was had with Amy Sellar, who was Purdy's supervisor. The hourly employee was later moved to a different team.

During this time, Purdy worked as a discovery specialist at Walmart and was promoted to a senior discovery specialist. About two months after her promotion, Purdy saw that her job title had not been changed to reflect the promotion. So she decided to use a department list to verify that her job code and title matched codes and titles of other senior discovery specialists. Purdy alleged that the department list was not restricted in any manner, nor did a policy forbid her from using the list to verify the information sought.

Walmart terminated Purdy's employment after it learned what she had done. Purdy in turn alleged that Walmart fired her under the pretext that she had engaged in unacceptable "personal conduct" and violated an "information policy." The real reason for the termination, according to Purdy, was that she had reported the coworkers' affair. As we have recited, Walmart's open-door policy prevents retaliation for engaging in an open-door communication. Purdy also alleged that Walmart "failed to adhere to post-termination policies."

As with McCabe, Purdy raised breach-of-contract and promissory-estoppel claims in her complaint. Purdy essentially alleged that she had "valid and enforceable contracts" with Walmart to work in exchange for compensation as outlined in the company's policies. The complaint also alleged that there were "implicit terms" of an employment contract. The promissory-estoppel claim was largely based on the notion that Purdy reasonably relied to her detriment on Walmart's promise not to retaliate against her for engaging in an open-door communication concerning her coworkers' affair.

As mentioned earlier, Arkansas's at-will employment doctrine generally bars an employee from recovering against an employer that has ended the employment relationship. *Cottrell v. Cottrell*, 332 Ark. 352, 965 S.W.2d 129 (1998). Our supreme court has, however, recognized two exceptions to the at-will doctrine. The first is based on an "implied contract" theory; the second is rooted in public policy.

The implied-contract exception permits a lawsuit based on the theory that an employer who promises an employee that he or she will not be discharged without cause must honor that promise. *Gladden v. Ark. Children's Hosp.*, 292 Ark. 130, 728 S.W.2d 501 (1987). The employer must have expressly made such an agreement before the narrow exception will apply. *Id.* This narrow exception must essentially reflect (in some manner) a guarantee of job security in an employer's personnel manual. *See Crain Indus., Inc. v. Cass*, 305 Ark. 566, 568, 810 S.W.2d 910, 911 (1991) (handbook statement that "in the event it should become necessary to reduce the number of employees in the workplace, employees will be laid off on a seniority basis" was express provision against wrongful discharge that could be relied on by employee). *But see Smith v. Am. Greetings Corp.*, 304 Ark. 596, 600, 601, 804 S.W.2d 683, 685, 686 (1991) (handbook statement that "[w]e believe in working and thinking and planning to provide a stable and growing business, to give such service to our customers that we may provide maximum job security for our employees" was not an express provision that defeated the at-will doctrine). Employer policies that address grievance procedures, drug tests, and progressive-disciplinary actions generally do not meet this exception. *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002) (grievance procedure); *Hice v. City of Fort Smith*, 75 Ark. App. 410, 58 S.W.3d 870 (2001)

7

(drug testing); *St. Edward Mercy Med. Ctr. v. Ellison*, 58 Ark. App. 100, 946 S.W.2d 726 (1997) (progressive-discipline policy).

The second exception—the public-policy one—applies when the reason for the discharge is "so repugnant to the general good as to deserve the label 'against public policy.'" *Marine Servs. Unlimited, Inc. v. Rakes*, 323 Ark. 757, 764, 918 S.W.2d 132, 135 (1996) (citing *Smith v. Am. Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991)). It too is a narrow bridge over the at-will moat. For example, the public-policy exception prevents employers from discharging employees for an employee's refusal to violate a criminal statute, when an employee exercises a statutory right or complies with a statutory duty, or when an employee exercises a right protected by our state's public policy. *E.g.*, *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988) (prohibiting discharge of an employee for complaining about and investigating suspected Medicaid fraud). To invoke this exception an employee must generally plead something like "the defendants wrongfully discharged the plaintiff in violation of the public policy of Arkansas." *Island v. Buena Vista Resort*, 352 Ark. 548, 562, 103 S.W.3d 671, 679 (2003) (holding genuine issue of material fact existed on whether plaintiff's employment was terminated because she refused unwanted sexual advances in violation of public policy).

Purdy's complaint did not invoke either of the two exceptions to the at-will employment doctrine. She alleged that she was wrongfully discharged; but the at-will doctrine generally sinks that claim, absent an exception. This is true in Purdy's case because all of Walmart's policies and documents at issue expressly refer to the at-will doctrine and state that Walmart may terminate any employment relationship, unilaterally, at will. Also,

8

Walmart's express disclaimers in its policies and ethics statement prevent those documents from being employment contracts. Because no document in the record purports to guarantee job security or establish employment for a particular period of time, Purdy's complaint does not fall within the implied-contract exception to the at-will employment doctrine. Nor, as we have said, did Purdy expressly plead a public-policy exception to the at-will doctrine in her complaint and state what public policy was implicated and how Walmart breached it. To the extent she alleged violations of good faith and fair dealing, those assertions are not separately actionable. *W. Memphis Adolescent Residential, LLC v. Compton*, 2010 Ark. App. 450, 374 S.W.3d 922. Because Arkansas's robust at-will employment doctrine defeats Purdy's contract claim, we affirm the circuit court's dismissal of it with prejudice.

Purdy's claim for promissory estoppel (justifiable reliance) also falls short. Promissory estoppel applies when a plaintiff can potentially show that (1) the defendant made a promise; (2) the defendant should have reasonably expected the plaintiff to act or refrain from acting in reliance on the promise, and the plaintiff reasonably relied on the promise to its detriment; and (3) an injustice can be avoided only by enforcing the promise. *Fairpark, LLC v. Healthcare Essentials*, 2011 Ark. App. 146, at 12, 381 S.W.3d 852, 859. Here, Purdy's employment was at will, so there was no reasonable basis to believe that she was promised employment for some (unstated) time period. Because Purdy could have been discharged for no reason at all, she cannot recover for being terminated from her at-will job. This also means that she could not have reasonably relied on statements by Walmart when those same statements are expressly qualified (one could say totally neutralized) by the at-will doctrine.

9

Purdy's allegations that she relied on the open-door policy statements are not reasonable as a matter of law given Walmart's express disclaimers. This court has before affirmed the dismissal of a promissory-estoppel claim in the Rule 12(b)(6) context, albeit on a different set of facts. *See Johnson v. Blytheville Sch. Dist.*, 2017 Ark. App. 147, 516 S.W.3d 785 (affirming dismissal of promissory-estoppel claim). There is, in other words, no "promissory estoppel exception" to the at-will doctrine. It is not this court's role to create what would be tantamount to a new exception to the at-will doctrine—and a broad and open-ended one at that—on the record and arguments now before us.

The circuit court's dismissal of Purdy's claims with prejudice is therefore affirmed.

II. *The Unsupported Attorney-Fee Award*

The circuit court awarded Walmart an attorney fee exceeding $13,000 in the following context. After Walmart had obtained a dismissal of McCabe and Purdy's claims with prejudice, it asked the court to extend the time (under Ark. R. Civ. P. 54(e)) to seek an attorney fee and costs as the prevailing party. The stated reason for the extension of time was that Walmart did not intend to recoup its attorney fee and costs unless the plaintiffs appealed the court's dismissal. The circuit court extended the time for Walmart to seek a fee and costs.

McCabe and Purdy appealed the dismissal of their complaint. Walmart then moved for fees pursuant to Ark. Code Ann. § 16-22-308 (Supp. 2017) as the prevailing party in a "contract" action. The plaintiffs opposed Walmart's request for four reasons:

- Fees can be awarded only if there is a contract;

- Fees can be assessed as reasonable only if there are time records, and there is no factual basis to determine whether the fees Walmart claimed are reasonable;

10

- Fees can only be upheld if there is an analysis pursuant to *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990), and Walmart did not provide any facts relevant to the *Chrisco* factors; and

- Fees are discretionary, and litigants should not be discouraged from bringing claims for fear of paying fees, especially when there is a large disparity of income between the parties.

Walmart responded that it was entitled to recoup its attorney fee for successfully defending the wrongful-termination claim, which sounds in contract under Arkansas law. The company also wrote, "To protect the privileged nature of counsel's billings and to provide Plaintiffs with sufficient information to conduct a meaningful review" it should produce its billing statements in camera to the circuit court "promptly so as not to delay a decision on its [fee] motion." Third, Walmart argued that the circuit court was familiar with the case and the services rendered based on the parties' pleadings, motions, briefing, and appearances. Therefore, the court had enough information to conduct a *Chrisco* analysis. Finally, Walmart said that the disparity of income between the company and the plaintiffs could not justify a denial of the request for an attorney fee because "[p]laintiffs refused Walmart's offer despite knowing that Walmart would incur and seek attorney's fees defending this breach of contract action."

In the October 2018 judgment that awarded an attorney fee against the plaintiffs, the circuit court found the following:

> 5.   As the prevailing party, Defendant timely filed a motion for attorney's fees on September 17, 2018, requesting $13,658.00 in fees incurred in defending this action. Plaintiffs opposed the Defendant's requested fees.
>
> 6.   As the prevailing party in this action, Defendant is entitled to recover its reasonable attorney's fees pursuant to Ark. Code Ann. § 16-22-308. *See Marlow v. United Sys. of Ark., Inc.*, 2013 Ark. 460.

7. Having taken into account the experience and ability of counsel, the time and labor required to perform the legal services properly, the amount involved in the case and the results obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or contingent, and the time limitations imposed upon the client by the circumstances, among other factors, the Court finds that the Defendant's request for $13,658.00 in attorney's fees is proper and reasonable under the circumstances of this case.

McCabe and Purdy amended their notice of appeal to include the attorney-fee judgment. They now argue that no evidence supports the $13,658 judgment because Walmart submitted an unverified motion and did not provide time logs, invoices, or any other information that the circuit court could use to assess the fee's reasonableness. "Without knowing Walmart's attorney's hours, their hourly rate, or what they did for those hours, it is impossible to determine whether the fee is reasonable." McCabe and Purdy ask this court to reverse and dismiss the fee award because it "lacks any evidence"; alternatively, they want a remand so the circuit court can perform an informed *Chrisco* analysis.

Walmart contends that the circuit court did not abuse its discretion because it was entitled to use its own experience as a guide, the court was not required "to conduct an exhaustive hearing on the matter," and the court presided over the proceedings and gained familiarity with the case and the services rendered. The company relies on *Payne v. Donaldson*, 2011 Ark. App. 467, 385 S.W.3d 296 to support the court's decision.

First, the circuit court had the authority to award an attorney fee against McCabe and Purdy after the Rule 12(b)(6) dismissal. Arkansas is an at-will employment state, and our supreme court has interpreted Ark. Code Ann. § 16-22-308 to allow an employer to recover fees for successfully defending a former employee's wrongful-discharge claim. *Marlow v. United Sys. of Ark., Inc.*, 2013 Ark. 460. But the power to award a fee does not

12

mean that the court can do so without first informing its discretion as to the reasonableness of the requested amount.

We hold that the circuit court abused its discretion when it awarded a substantial attorney fee in Walmart's favor before receiving any evidence regarding the work Walmart's counsel had performed and before giving the plaintiffs a meaningful opportunity to challenge the fee. As we have read the record, the circuit court received no exhibits, affidavits, deposition testimony, or live testimony under oath to support the fee request. *See* Ark. R. Civ. P. 54(e)(3) (2019). In our view, the law does not accept an attorney's assertion in a motion as being the proof necessary to support a $13,000 judgment. Some sort of proof is required before a court may order one party to pay the other party money. *See Tharp v. Smith*, 326 Ark. 260, 930 S.W.2d 350 (1996) (moving party is required to introduce evidence of damages).

All the circuit court had when it awarded a fee was one statement, in a motion, that Walmart's counsel generated a $13,000+ attorney fee during a Rule 12(b)(6) proceeding that included a short hearing and approximately fifteen pages filed on Walmart's behalf before the dismissal was granted. (True, some post–dismissal wrangling occurred, too.) The assertion may be well taken and easily proved. We are not questioning the accuracy of counsel's statement. The crucial point is an entirely different one: the circuit court did not have enough information on which to even make a lodestar calculation. Yet the lodestar method is perhaps the most rudimentary calculation that can be made (number of hours worked multiplied by the hourly rate). Had that method been used, for example, then at least counsel's hourly rate and total hours expended could have been addressed by the

13

plaintiffs in opposition; the court would have been more informed, too. If there was some other arrangement besides an hourly rate one, then the point that more information is needed about the fee Walmart incurred seems all the stronger. The law plainly gives a challenging party the right to an adversarial submission of the issue to the court. Ark. R. Civ. P. 54(e)(3). McCabe and Purdy did not receive what the law provides. They are therefore entitled to a do over.

Walmart is exactly right that the circuit court is not required to do an exhaustive analysis when settling an attorney-fee dispute. We make no holding to the contrary. There must, however, be some basis in fact for a fee amount when the matter is contested. The adversarial system does not evaporate just because a motion to recoup an attorney fee is filed. Again, as the plaintiffs point out, they were entitled to something rather than nothing as they sought to minimize an exposure to a significant money judgment.

The company relies on *Payne v. Donaldson*, 2011 Ark. App. 467, 385 S.W.3d 296, but in that case the parties submitted affidavits to support the fee request. "The record reflects that appellee initially submitted an affidavit in support of his motion for fees and costs and, following remand, appellee likewise submitted an affidavit in support of his renewed motion for fees and costs." *Id*. at 5, 385 S.W.3d at 299. *Payne* cuts against Walmart, not for it.

This is a good time to highlight an important point, which is that too few parties and courts are appreciating the factual context in which *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990) was decided. (This court has not been blameless either.) In *Chrisco*, the supreme court at least had the number of hours the attorneys had spent and what their

14

hourly rates were as it addressed the reasonableness of the fee amount. *Id.* at 230, 800 S.W.2d at 719. But even having a lodestar calculation at hand may not in and of itself provide enough information to make a meaningful appellate review for one reason or another. *See Bailey v. Rahe*, 355 Ark. 560, 142 S.W.3d 634 (2004) (attorney-fee award was an abuse of discretion when circuit court gave no valid explanation for lowering attorney's hourly fee from $150 to $125 an hour); *Conway Commercial Warehousing, LLC v. FedEx Freight E., Inc.*, 2011 Ark. App. 51, at 9, 381 S.W.3d 94, 100 (holding it was an abuse of discretion when prevailing party in a breach-of-contract case filed a "verified application" for $30,548.76 in attorney fees and expenses; the attorney's rate was $175 per hour, and the court did not explain its grounds for a 50 percent fee reduction).

Our concluding point should be entirely uncontroversial—there must be some evidence in the record to support a judgment for a substantial attorney fee when the court awards one in a breach-of-contract case. Here, the record falls short of that requirement.

The June 2018 order granting the Rule 12(b)(6) dismissals with prejudice is affirmed. The October 2018 attorney-fee award is reversed, and the case remanded for further proceedings.

Affirmed in part; reversed and remanded in part.

VIRDEN, SWITZER, WHITEAKER, VAUGHT, and MURPHY, JJ., agree.

GLADWIN, KLAPPENBACH, and BROWN, JJ., concur in part, dissent in part.

**N. MARK KLAPPENBACH, Judge, concurring in part and dissenting in part**. I agree with the majority opinion to the extent that it affirms the dismissal of the appellants' complaint against Wal–Mart. The majority opinion also correctly recognizes that Wal–Mart

was entitled to attorney's fees as the prevailing defending party in this wrongful-discharge case, rejecting appellants' argument to the contrary. I disagree with the majority's conclusion that the attorney-fee award must be reversed and remanded. In my view, appellants failed to carry their burden to demonstrate an abuse of the circuit court's considerable discretion.

As our supreme court explained in *Harrill & Sutter, P.L.L.C. v. Kosin*, 2012 Ark. 385, 424 S.W.3d 272, the decision to award attorney's fees and the amount to award is discretionary and will be reversed only if the appellant can demonstrate that the circuit court abused its considerable discretion. Here, the circuit court specifically recited that it considered the *Chrisco* factors when it awarded attorney's fees to Wal-Mart.[1]

Appellants focus on the absence of Wal-Mart's "time logs" or "time records."[2] The majority seizes on the absence of time logs or time records too. The majority, however, refuses to recognize that Wal-Mart had asked for permission to submit its billing records to the circuit court in camera or under seal for consideration and for permission to provide appellants "a court-approved summary of those records that indicate the total time devoted

---

[1]The circuit court's order recited, "Having taken into account the experience and ability of counsel, the time and labor required to perform the legal services properly, the amount involved in the case and the results obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or contingent, and the time limitations imposed upon the client by the circumstances, among other factors, the Court finds that the Defendant's request for $13,658.00 in attorney's fees is proper and reasonable under the circumstances of this case." This demonstrates that the circuit court adhered to the applicable guiding factors of *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990).

[2]Appellants did not raise any arguments about the experience or ability of Wal-Mart's attorneys, the fee customarily charged in that area for similar legal services, or the difficulty of the issues involved. This case was not an objectively simple one, and nine judges on our court (three divisions) decided this appeal.

16

to certain categories of work." Appellants did not ask for a hearing to defend against the motion for attorney's fees nor did appellants request that the circuit court act on Wal-Mart's offer to present its billing records. This set of facts is starkly different from the situation in *Van Carr Enters., Inc. v. Hamco, Inc.*, 365 Ark. 625, 232 S.W.3d 427 (2006), wherein our supreme court affirmed the circuit court's decision to deny attorney's fees because the movant failed to explain why it could not provide redacted bills to the opposing party.

More importantly, the circuit court was fully acquainted with this record and the proceedings involved. As stated in Wal-Mart's request for attorney's fees, Wal-Mart necessarily had to investigate the facts and develop strategy in response to appellants' complaint asserting breach of contract and promissory estoppel, and there were numerous motions, replies, and a hearing, all of which were familiar to the circuit court.[3] The motion for attorney's fees remained under submission for approximately a month, after which the circuit court rendered its decision on the award of attorney's fees.

The allowance of fees by the circuit court must be affirmed unless the appellant demonstrates, or the record shows, that the allowance is excessive, inadequate or unreasonable. *Ark. Fed. Credit Union v. Pigg*, 2015 Ark. App. 560. We recognize the superior

_____

[3]In its attorney-fee request, Wal-Mart included the work related to preparation and filing of its Motion to Dismiss, a brief in support of the Motion to Dismiss, a reply to appellants' response to the Motion to Dismiss, a Motion to Extend Time to file Motion for Attorney's Fees and Costs, a response to appellants' Motion for New Trial or in the alternative Motion for Findings of Fact and Conclusions of Law, and a Second Motion for Extension of Time to File Motion for Attorney's Fees and Costs. Wal-Mart's fee request encompassed its preparation for and attendance at the hearing on its Motion to Dismiss. Wal-Mart omitted from its fee request the work related to its Motion for Attorney's Fees, supportive brief, and its reply to appellants' response to the Motion for Fees.

17

perspective of the trial judge in assessing the evidence bearing on the applicable factors because of his intimate acquaintance with the record and the quality of services rendered. *Id.* There is no fixed formula or policy to be considered in arriving at such fees other than the rule that the appropriately broad discretion of the trial court in such matters must not be abused. *Id.*

While the better practice would be to have some form of the billing statements in the record or an affidavit verifying the number of hours expended, the circuit court here was wholly familiar with the entirety of the filings in this case, the nature and complexity of the causes of action being litigated, and the proceedings held in open court. Under these circumstances, appellants failed to carry their burden to demonstrate that the fee allowance was excessive or unreasonable.

GLADWIN and BROWN, JJ., join.

*Pinnacle Law Group*, by: *Matthew A. Kezhaya*, for appellants.

*Kutak Rock LLP*, by: *Scott Jackson* and *Bailey Knapp*, for appellee.